THE GREAT A & P TEA CO., INC.

*v.*

J. CARNEY DAVIS, ASSESSOR OF

MARION COUNTY, WEST VIRGINIA, *and*

MARION COUNTY BOARD OF REVIEW

AND EQUALIZATION

(No. CC918)

Decided May 26, 1981.

*Frank V. Sansalone* and *Woodrow A. Potesta* for plaintiff.

*Charles E. Anderson,* Prosecuting Attorney, for defendants.

NEELY, JUSTICE:

This case presents four certified questions from the Circuit Court of Marion County and concerns the extent to which a county tax assessor can separately assess a leasehold interest in real property. The petitioner, The Great Atlantic and Pacific Tea Company, Inc., is a Maryland corporation engaged in the retail grocery business. In connection with its grocery business the A & P operates a label and box printing plant near Fairmont, in Winfield District, Marion County.

The A & P does printing in a building owned by the Mar-Mar Corporation under a long-term lease from Mar-Mar. For the tax years 1978 and 1979 the Marion County Assessor assessed the Mar-Mar property leased to A & P at $598,900. Mar-Mar Corporation appealed this assessment to the Marion County Board of Equalization and Review in January 1979 and the Board granted a reduction in assessment to $440,000. Following this reduction the assessor assessed the difference between the original and revised assessments of Mar-Mar, i.e., $158,900 to the A & P as the value of its leasehold. The A & P then applied to the Board of Equalization and Review for relief from this assessment, and after an adverse decision by the Board, A & P appealed to the State Tax Commissioner requesting an abatement. When the Tax Commissioner ruled that the A & P leasehold interest was taxable, A & P appealed pursuant to *Code,* 11-3-25 [1967] to the Circuit Court of Marion County which affirmed the Tax Commissioner.

At the hearing before the circuit court the A & P raised the absence of statutory authority for an assessment of

this type of leasehold; the absence of taxation of similar leases in Marion County; and, lack of a standard for evaluation of a leasehold interest. The only witness in the circuit court was the Marion County Assessor who testified generally concerning the method which he employed in arriving at the $158,900 assessment for the leasehold interest, namely that he took the original assessment to Mar-Mar Corporation, subtracted the reduced assessment applied by the Board of Equalization and Review, and attributed the difference to the A & P's leasehold.

## I

*W. Va. Code*, 11-5-1 [1961] provides:

> All personal property belonging to persons residing in this State, whether such property be in or out of the State, and all personal property in the State, though owned by persons residing out of the State, shall be entered in the personal property book, and be subject to equal and uniform taxation, . . .

*W. Va. Code*, 11-5-3 [1961] defines "personal property" as:

> [A]ll fixtures attached to land, if not included in the valuation of such land entered in the proper land book; all things of value, movable and tangible, which are the subjects of ownership; all chattels, real and personal; all notes, bonds, and accounts receivable, stocks and other intangible property.

Finally, *W. Va. Code*, 11-5-4 [1972] which provides the mechanics for taxing personal property provides that:

> [I]n cases of the assessment of leasehold estates a sum equal to the valuations placed upon such leasehold estates shall be deducted from the total value of the estate, to the end that the valuation of such leasehold estate and the remainder shall aggregate the true and actual value of the estate.

It would appear from the statutory scheme that a separate leasehold is taxable if it has a separate and independent value from the freehold. *W. Va. Code*, 11-3-1 [1961] provides that:

> All property shall be assessed annually as of the first day of July at its true and actual value; that

is to say, at the price for which such property would sell if voluntarily offered for sale by the owner thereof, upon such terms as such property, the value of which is sought to be ascertained, is usually sold, . . .

Where leaseholds are of short duration the rent paid will usually reflect income to the owner of the freehold commensurate with the fair market value of the real property. Under ordinary conditions the freehold estate will not be reduced in value by virtue of the leasehold, nor will the leasehold itself have any ascertainable market value. Since this latter condition is the normal circumstance in West Virginia, when assessors assess freeholds subject to leaseholds the property is usually fully taxed.

However, there are circumstances involving long-term leaseholds where changed business conditions combined with persistent inflation have made the leaseholds themselves marketable assets of value. Under such circumstances, since the freehold estate is charged with the leasehold for a term of years, the freehold's fair market value is reduced in exact proportion to the value of the leasehold and, therefore, if the real property subject to the leasehold is to be taxed at its "true and actual value," assessors must take into consideration the reduced value of the freehold attendant upon the making of a very bad contract.

The A & P argues that *W. Va. Code*, 11-3-12 [1972] is silent concerning whether leaseholds must be listed by corporations on the personal property return, and therefore, A & P argues it was not the intention of the Legislature to tax leaseholds. We find, however, that the provision requiring the listing of "credits and investments other than its own capital stock held by it . . ." in *Code*, 11-3-12(c) is sufficiently broad to cover corporation investments in leaseholds. Since it is apparent from the provisions of *Code*, 11-5-1 [1961] *et seq.* that it is the intent of the Legislature to tax chattels real, the term "credits and investments" in *Code*, 11-3-12(c) [1972] must be read in *pari materia;* otherwise, we would arrive at the ridiculous conclusion that an individual can

escape taxation of a valuable asset merely by forming a corporation.

Consequently we answer the first certified question which asks whether the assessment made by the assessor was contrary to the provisions of *Code*, 11-3-1 [1961] in the negative and affirm the circuit court in this regard. This conclusion then leads inevitably to answering the second certified question, namely, whether the Legislature granted the assessor statutory authority to tax corporate commercial leaseholds as chattels real, in the affirmative, and we again affirm the ruling of the circuit court.

## II

The third and fourth certified questions concern whether the failure of the Marion County Assessor to assess other corporate leaseholds in Marion County denied the A & P its right to equal protection, and whether the value placed upon the assessment of the leasehold was arbitrary and capricious? As we have already indicated, it is not necessary to tax leaseholds when they have no independent value and, furthermore, there is no need to undertake unnecessary administrative costs to tax leaseholds separately where the owner of the fee has agreed to pay all property taxes owing on the fair market value of the real estate. Many commercial contracts have specific provisions relating to the allocation of the tax burden.

As a matter of course the assessor can proceed to tax all real property at his evaluation of its true and actual value, and that assessment stands as the appropriate measure of tax on that particular piece of property until the assessor receives a protest or is notified that a leasehold or other interest should be assessed separately. Consequently, the mere fact that the assessor has not listed numerous other commercial leaseholds on the property books does not necessarily reflect a failure to execute a policy of equal and uniform taxation; it may merely reflect either the absence of long-term leases having independent commercial value within the county, or a course of business and trade practice whereby the fee owner pays taxes on fair market

value and is compensated in some manner by the leaseholder.

The county assessor may presume that commercial leases do not diminish the value of the freehold estate and proceed to tax all real property at its true and actual value; the burden of showing that a leasehold reduces the value of a freehold is upon the taxpayer and the taxpayer must request in a timely manner the separate listing of freehold and leasehold interests.

In the case before us, unlike the case of *In the Matter of U. S. Steel Corp.*, ___ W.Va. ___, 268 S.E.2d 128 (1980) the record is devoid of evidence that there was real property in Marion County which, because of commercial leaseholds, was not taxed at its true and actual value. As we have consistently held, variations in assessments will not be considered unless the presumption of correctness is clearly rebutted by the evidence introduced by the taxpayer. *In re Tax Assessments Against Pocahontas Land Corporation*, 158 W.Va 229, 210 S.E.2d 641 (1974); *In re Tax Assessments Against the Southern Land Co.*, 143 W.Va. 152, 100 S.E.2d 555 (1957), *overruled on other grds.* by *In Re Assessment of Kanawha Valley Bank*, 144 W.Va. 346, 109 S.E.2d 649 (1959); and, *Bankers Pocahontas Coal Co. v. County Court*, 135 W.Va. 174, 62 S.E.2d 801 (1950), *overruled on other grds.* by *In re Assessment of Kanawha Valley Bank*, 144 W.Va. 346, 109 S.E.2d 649 (1959).

Accordingly, for the reasons set forth above the rulings of the Circuit Court of Marion County with regard to all certified questions are affirmed.

*Affirmed.*