319 S.E.2d 410

**In re Tax Assessment Against the Sarah and Pauline MAIER Scholarship Foundation, Inc.**

No. 15918.

Supreme Court of Appeals of West Virginia.

July 13, 1984.

Charles E. King, Jr., Asst. Pros. Atty., Charleston, for appellant.

Jackson, Kelly, Holt & O'Farrell, Love, Wise & Woodroe, Bowles, McDavid, Graff & Love, Charleston, Charles G. Johnson, Clarksburg, for appellee.

McHUGH, Chief Justice:

This action is before this Court upon the petition of the appellant, G. Kemp Melton, the Assessor of Kanawha County, West Virginia, for an appeal from the final order of the Circuit Court of Kanawha County. As reflected in that order, the circuit court declared improper a tax assessment by the appellant (hereinafter "assessor") upon a Kanawha County leasehold interest of the appellee, Sarah and Pauline Maier Scholarship Foundation, Inc. In this action, we are asked to review the question of whether a private leasehold interest in county property, which leasehold interest was established under the authority of the Industrial Development Bond Act of West Virginia, W. Va. Code, 13–2C–1 [1963], et seq.,[1] is exempt under that Act from a county assessment for ad valorem taxation.[2] This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

Subsequent to the granting of the appeal in this action, this Court, by order entered on November 22, 1983, granted pursuant to W. Va. Code, 58–5–25 [1931], the motion of the appellant for leave to move to reverse the judgment of the circuit court.

In support of the appellant assessor, a brief amicus curiae was filed with the Court by The Board of Education of the County of Kanawha. Briefs amicus curiae in support of the appellee were filed by Volkswagen of America, Inc., and Fourco Glass Company.

I

FACTS

By deed made on February 1, 1965, the Owens-Illinois Glass Company conveyed certain property to The County Court of Kanawha County, West Virginia. The property is located in the Kanawha City area of Kanawha County. In consideration for the conveyance, the county court (presently known as the "county commission")[3] issued and delivered to the Owens-Illinois Glass Company certain "Industrial Development Revenue Bonds" in the amount of $1,650,000.[4] Those revenue bonds were issued by the county court pursuant to the Industrial Development Bond Act of West Virginia. W. Va. Code, 13–2C–1 [1963], et seq.

By lease, also made on February 1, 1965, the county court leased the property to the appellee, Sarah and Pauline Maier Scholarship Foundation, Inc. The appellee is a private non-profit corporation, organized under the laws of this State. During the period in question, its use of the leased property involved, primarily, the operation of a commercial warehouse facility.

Pursuant to the lease, which was for a period of forty years, the appellee was required to pay rent to the county court (the lessor) which, in effect, consisted of

---

1. The Industrial Development Bond Act is presently known as the "Industrial Development and Commercial Development Bond Act." W. Va. Code, 13–2C–1 [1974].

2. Black's Law Dictionary 48 (5th ed. 1979) defines "Ad valorem," in part, as follows: "According to value. A tax imposed on the value of property."

3. The office of county court or tribunal was redesignated "county commission" pursuant to the "Judicial Reorganization Amendment," ratified on November 5, 1974, to the Constitution of West Virginia. See W. Va. Const., art. IX, § 9.

4. The conveyance of the property from the Owens-Illinois Glass Company to the county court was:

> for and in consideration of the issuance and delivery to Owens-Illinois Glass Company, party of the first part, by The County Court of Kanawha County, West Virginia, party of the second part, of Industrial Development Revenue Bonds in the aggregate principal amount of One Million Six Hundred Fifty Thousand Dollars ($1,650,000.00) bearing interest at the rate of four and one-half per cent (4½%) per annum, payable semi-annually, issued by the party of the second part pursuant to the provisions of the Industrial Development Bond Act of West Virginia....

the outstanding principal and interest payable upon the Industrial Development Revenue Bonds, which, as described above, the county court had issued for the purchase of the property.[5] The lease further provided that the appellee had an "exclusive right and option to purchase" the property for $5,000 "plus an amount equal to all unpaid installments of rent, if any...."[6] Finally, the lease[7] contained a section providing that the property would be exempt from taxation. That lease provision, section 20, provided, in part, as follows:

> As a part of the consideration hereof Lessor has exonerated the leased property from all taxes which constituted a lien thereon at the date hereof and Lessor covenants and agrees with Lessee that the leased property, any leasehold estate, option, or other interests of the Lessee therein, the said Bonds and coupons, the rents reserved hereunder, and the payments herein provided for are each and all exempt to the full extent permitted by law from all taxation by the State of West Virginia, the County of Kanawha, and/or any other political subdivision,

taxing unit or instrumentality of said State.

In a letter dated January 29, 1982, the Assessor of Kanawha County informed the appellee that he determined that the appellee's leasehold interest in the property represented a "chattel real" and would be assessed upon the personal property books of Kanawha County "for tax year 1982...." The appellee protested that tax assessment, which protest the assessor denied, and the matter was, pursuant to *W.Va.Code*, 11–3–24a [1961], certified to the State Tax Commissioner of West Virginia for determination.

By decision dated February 26, 1982, the Tax Commissioner ruled that the appellee had a chattel real interest in the property owned by the county court and that such interest was subject to ad valorem tax assessment. Subsequent to the filing by the appellee, however, of an appeal in the Circuit Court of Kanawha County, the Tax Commissioner, by decision dated April 19, 1982, entitled "Property Tax Ruling 82–6T

**5.** Section 4 of the lease of the property by the county court to the appellee provided, in part:

> [T]he Lessee binds itself to pay to the Lessor semi-annual rentals on the 15th day of July and January of each year beginning on July 15, 1965 and ending on January 15, 2005, in the sum of Forty Five Thousand One Hundred Eighty Dollars ($45,180.00).
>
> ....
>
> The term "all unpaid installments of rent" for the purposes of this lease shall mean, at any time and from time to time during the term hereof, an amount equal to the entire principal amount of the then outstanding Industrial Development Revenue Bonds, Series A, of the Lessor dated February 1, 1965, and Parity Bonds, together with all applicable redemption premiums and interest accrued and to accrue on and prior to the next succeeding redemption date of such Bonds....

**6.** Section 18 of the lease, relating to the appellee's option to purchase the property, provided, in part:

> As part of the consideration for the execution of this lease by Lessee, Lessor hereby gives the Lessee, while Lessee is in good standing with reference to all obligations hereunder, the exclusive right and option to purchase the leased property on August 1 or February 1 of any year of the term hereof or within sixty (60) days succeeding the expiration or other termination hereof, at a fixed

purchase price of Five Thousand Dollars, plus an amount equal to all unpaid installments of rent, if any, as hereinbefore defined.

**7.** Other provisions of the lease, which provisions are relevant to this action, provided, in part:

> Section 5. *Possession.* The Lessor agrees to place the Lessee in full possession of the leased property immediately upon the execution of this lease to hold, occupy and possess the same as the absolute owner thereof....
>
> Section 6. *Use of Leased Property.* Insofar as is practicable under existing conditions, the Lessee contemplates sub-letting and sub-leasing various parts of the leased property suitable therefor, or susceptible of being made suitable therefor, for manufacturing, processing, assembly and fabricating operations, or related or connected activities, and not exclusively for warehousing, by as many persons or organizations as may from time to time occupy the leased property, as one of the purposes of this lease is to provide employment for as many persons as possible....
>
> Section 8. *Repairs and Trustee's Fees....* The Lessor covenants and agrees that it will not sell, convey or in any manner dispose of the leased property during the term hereof, except as provided in Section 18 hereof [Section 18 concerns the Lessee's option to purchase the property].

(Revised)" reconsidered his ruling and, instead, ruled that the appellee's leasehold interest in the property was, under *W. Va. Code*, 13–2C–15 [1963], exempt from ad valorem taxation. The Tax Commissioner stated as follows:

> [I]t is my revised ruling that the taxpayer, Sarah and Pauline Maier Foundation, Inc., has a chattel-real interest in real property owned by the County Commission of Kanawha County in Kanawha City, West Virginia, but that such chattel-real interest is deemed to be public property within the meaning and intent of the Industrial and Commercial Bond Development Act, W.Va.Code Art. 13–2c and exempt from ad valorem taxes under the provisions of W.Va.Code § 13–2c–15 and Article X, § 1 of the West Virginia Constitution.

The circuit court, as reflected in its final order dated August 2, 1982, upheld the Tax Commissioner's revised ruling and determined that, although the appellee's leasehold interest in the property constituted a "class IV chattel real personal property" [8] interest, that leasehold interest was, pursuant to *W. Va. Code*, 13–2C–15 [1963], of the Industrial Development Bond Act, exempt from taxation. Accordingly, the assessment against the appellee's interest was

declared by the circuit court to be improper.

It is from the circuit court's finding of exemption from taxation that the assessor appeals to this Court.

## II

## THE INDUSTRIAL DEVELOPMENT BOND ACT

■ The acquisition of the property in question by the county court and the leasing of that property by the appellee occurred under the Industrial Development Bond Act. *W. Va. Code*, 13–2C–1 [1963], *et seq.* Pursuant to that Act, originally enacted in 1963, counties and municipalities were empowered to acquire "industrial plants" through the issuance of revenue bonds and to lease those plants to concerns such as the appellee. Under the Act, the principal and interest upon the bonds were payable from revenues derived from the leasing of the plant, and counties and municipalities were empowered to grant to the lessees an option to purchase the plant. *W. Va. Code*, 13–2C–4 [1963]; *W. Va. Code*, 13–2C–7 [1963]. The purpose of the Act was to promote industry in this State and thereby lessen the problem of unemployment.[9]

> Legislative Finding.—It is hereby determined and declared as a matter of legislative finding (a) that critical conditions of unemployment exist in many areas of this state; (b) that lack of employment and business opportunities have resulted in thousands of people leaving this state to find employment elsewhere, and this exodus has adversely affected the tax base of counties and municipalities within this state, resulting in an impairment of their ability to support local government; (c) that the development of new commercial, industrial and manufacturing plants are essential to relieve unemployment and establish a balanced economy within the state; (d) that the present and prospective health, happiness, safety, right of gainful employment, and general welfare of the citizens of each of the counties and municipalities of this state will be promoted by the establishment of industrial plants as herein provided; (e) and that the means and measures herein authorized for the promotion of industrial plants are as a matter of public policy, for the public purpose of the several counties, municipalities and the state of West Virginia.

---

8. *W. Va. Code*, 11–8–5 [1961], provides as follows:

> For the purpose of levies, property shall be classified as follows:
>
> Class I.  All tangible personal property employed exclusively in agriculture, including horticulture and grazing;
>
> All products of agriculture (including livestock) while owned by the producer;
>
> All notes, bonds, bills and accounts receivable, stocks and any other intangible personal property;
>
> Class II.  All property owned, used and occupied by the owner exclusively for residential purposes;
>
> All farms, including land used for horticulture and grazing, occupied and cultivated by their owners or bona fide tenants;
>
> Class III.  All real and personal property situated outside of municipalities, exclusive of Classes I and II;
>
> Class IV.  All real and personal property situated inside of municipalities, exclusive of Classes I and II.

9. *W. Va. Code*, 13–2C–2 [1963], provided as follows:

The constitutionality of the Industrial Development Bond Act was challenged in *State ex rel. County Court of Marion County v. Demus*, 148 W.Va. 398, 135 S.E.2d 352 (1964). In *Demus*, the County Court (now county commission) of Marion County sought, under the Act, the acquisition of a building site and the construction upon that site of an industrial plant. The county intended to finance the project through the issuance of $1,750,000 in industrial development bonds, and the county further intended to lease the plant to a corporation known as Randco, Inc. The clerk of the county court, however, challenged the constitutionality of the Act and refused to affix the county seal to the bonds.

This Court in *Demus* directed the clerk of the county court to attest the bonds and affix to the bonds the seal of the county court. In so holding, this Court concluded that the Act violated none of the following provisions of the Constitution of West Virginia: (1) *W. Va. Const.*, art. X, § 1 (taxation shall be equal and uniform throughout the State), (2) *W. Va. Const.*, art. X, § 6 (the credit of the State shall not be extended to a county; nor shall the State ever assume the debts of any county), (3) *W. Va. Const.*, art. X, § 8 (the power of a county to incur debt is limited), (4) *W. Va. Const.*, art. III, § 9 (private property shall not be taken for public use without just compensation), and (5) *W. Va. Const.*, art. III, § 10 (no person shall be deprived of property without due process of law). This Court further concluded that the Act did not violate the Fourteenth Amendment to the Constitution of the United States which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

The clerk of the county court in *Demus* asserted, *inter alia*, that the Act was unconstitutional because it exempted from taxation "property held by the county court for profit and the interest of the lessee in such property." This Court stated generally, however, that section 15 of the Act (*W. Va. Code*, 13–2C–15 (1963)), which section provided the exemption, was authorized under *W. Va. Const.*, art. X, § 1, and, therefore, section 15 was constitutional. This Court stated as follows: "Certain it is that the provisions of Article X, Section 1, of the constitution are such as to empower the legislature to make the exemption [*W. Va. Code*, 13–2C–15 (1963)]." 148 W.Va. at 406, 135 S.E.2d at 358.

*W. Va. Code*, 13–2C–15 (1963), is the section of the Industrial Development Bond Act which is at issue in this action. That section provided as follows:

Exemption from Taxation.—The revenue bonds issued pursuant to this article and the income therefrom shall be exempt from taxation except inheritance, estate, and transfer taxes; and the real and personal property which a county court or a municipality may acquire to be leased to an industrial plant according to the provision of this article, shall be exempt from taxation by the state, or any county, municipality, or other levying body, as public property, so long as the same is owned by such county or municipality.[10]

---

**10.** It should be noted that the title to the Industrial Development Bond Act, as originally enacted, provided as follows:

AN ACT to amend chapter thirteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended, by adding thereto a new article, designated article two-c, relating to and authorizing the several counties and the several municipalities in this state ... to [*inter alia*] provide for exemption from taxation of such industrial plants, the revenues derived therefrom, and the bonds and the interest thereon; to prohibit any county or any municipality from making any tax levy as a contribution to the cost of such industrial plant....

*See* ch. 78, Acts of the Legislature of West Virginia—Regular Session 1963.

In 1974, the legislature changed the name of the Act from the "Industrial Development Bond Act" to the "Industrial Development and Commercial Development Bond Act." The title to the 1974 version of the Act merely stated that the Act provided for "exemptions from taxation." *See* ch. 47, Acts of the Legislature of West Virginia—Regular Session 1974.

Similarly, the title to the Act's legislative amendment in 1975 stated that the Act provided for "exemptions from taxation." *See* ch. 142, Acts of the Legislature of West Virginia—Regular Session 1975.

It is clear that this Court in *Demus*, by stating only that *W.Va.Code*, 13–2C–15 (1963), was authorized under this State's constitution, did not definitely settle the question now before this Court, i.e., whether the appellee's private leasehold interest in county property, which leasehold interest was established under the authority of the Industrial Development Bond Act, is exempt under that Act from county assessment for ad valorem taxation. The *Demus* opinion contains no analysis sufficient to aid this Court in considering the circumstances of this action. Therefore, *Demus* is not controlling.

## III

## DISCUSSION

■ Authority for taxation in this State and the exemption of property from taxation, pursuant to such exemption statutes as *W.Va.Code*, 13–2C–15 [1963], and *W.Va. Code*, 11–3–9 [1973] discussed below, is derived from the constitution of this State. *W.Va. Const.*, art. X, § 1, provides, in part, as follows:

> Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law.... [B]ut property used for educational, literary, scientific, religious or charitable purposes, all cemeteries, public property, the personal property, including livestock, employed exclusively in agriculture as above defined and the products of agriculture as so defined while owned by the producers may by law be exempted from taxation....

Other titles to legislative amendments of the Act did not contain language concerning exemptions from taxation.

11. In *State v. Kittle, supra,* this Court stated as follows:

> In view of the connection in which they are found as well as upon general principles, provisions in constitutions and statutes, exempting property from taxation, are always strictly construed. They constitute exceptions from the operation of more general provisions requiring, ordinarily, equality and uniformity in

■ This Court in *In re: Hillcrest Memorial Gardens*, 146 W.Va. 337, 119 S.E.2d 753 (1961), held in syllabus point 2 as follows:

> Constitutional and statutory provisions exempting property from taxation are strictly construed. It is encumbent upon a person who claims his property is exempt from taxation to show that such property clearly falls within the terms of the exemption; and if any doubt arises as to the exemption, that doubt must be resolved against the one claiming it.

*See also Central Realty Company v. Martin,* 126 W.Va. 915, 920, 30 S.E.2d 720, 724 (1944); *Greene Line Terminal Company v. Martin, infra,* 122 W.Va. 483 at 487, 10 S.E.2d 901 at 904; and *State v. Kittle,* 87 W.Va. 526, 529, 105 S.E. 775, 776 (1921).[11]

In *Great A & P Tea Co., Inc. v. Davis,* 167 W.Va. 53, 278 S.E.2d 352 (1981), a private corporation, A & P Tea Co., leased property from another private corporation, and the County Assessor of Marion County, West Virginia, assessed A & P's leasehold interest for tax purposes. This Court, upholding the taxability of the leasehold interest, held in syllabus point 1 as follows:

> The assessor of a county may assess the value of a leasehold as personal property separately in an amount such that when the value of the freehold subject to the lease is combined with the value of the leasehold the total reflects the true and actual value of the real property involved.

■ We stated in *Great A & P Tea Co., Inc.* that "a separate leasehold is taxable if it has a separate and independent value from the freehold," 167 W.Va. at 56, 278 S.E.2d at 355, and a county assessor has

taxation, so as to place the public burdens, as nearly as may be, upon all property and citizens alike. Considered independently of any adopted principle, equal and uniform taxation must be regarded as being equitable, fair and just. In as much as all exemptions evade the operation of this principle or encroach upon it, they ought to be strictly construed and the courts uniformly hold that they must be. (citations omitted)

87 W.Va. at 529, 105 S.E. at 776.

the authority to tax "corporate commercial leaseholds as chattels real...." 167 W.Va. at 56, 278 S.E.2d at 356.[12]

The question before this Court, however, is whether the appellee's leasehold interest was exempt under *W.Va.Code,* 13–2C–15 [1963], of the Industrial Development Bond Act, from taxation.

Chapter 11 of the West Virginia Code concerns taxation in this State, and article three of that chapter is entitled "Assessments Generally." *W.Va.Code,* 11–3–1 [1977], of that article provides that "[a]ll property shall be assessed annually ... at its true and actual value...." *W.Va.Code,* 11–3–9 [1973], exempts certain property from taxation, and that section is somewhat similar to *W.Va.Code,* 13–2C–15 [1963], the statute at issue in this action. *W.Va.Code,* 11–3–9 [1973], provides, in part, as follows:

> All property, real and personal, described in this section, and to the extent herein limited, shall be exempt from taxation, that is to say: Property belonging to the United States, other than property permitted by the United States to be taxed under state law; property belonging exclusively to the State; property belonging exclusively to any county, district, city, village or town in this State, and used for public purposes.... [13]

*Greene Line Terminal Co. v. Martin,* 122 W.Va. 483, 10 S.E.2d 901 (1940), involved a corporation, Greene Line Terminal, which operated a public wharf upon land it leased from the City of Huntington. That leasehold was assessed for taxation for the years 1935 through 1938 by the county assessor. The corporation asserted that pursuant to *W.Va.Code,* 11–3–9 (1933), its operation of the wharf was exempt from such taxation. This Court, however, affirmed the tax assessment.

In *Greene Line Terminal Co.,* the corporation asserted that, inasmuch as it, as lessee, operated the wharf for public use, the exemption under *W.Va.Code,* 11–3–9 [1933], should apply to the corporation the same as the exemption would apply to the City of Huntington, if the city had operated the wharf.[14] This Court rejected that assertion and stated as follows:

> But the leasehold at bar was properly assessed separately from the real estate whereon it is based because the latter, being city property in public use, is exempt from taxation. The property's public use operates to the benefit of the city, thereby relieving it from county and state taxes, but this exemption does not carry through for the benefit of the owner of the leasehold because the public

**12.** Statutory authority permits a county assessor to assess for tax purposes leasehold interests such as the leasehold interest involved in *Great A & P Tea Co., Inc., supra. W.Va.Code,* 11–5–1 [1961], *et seq.*

*W.Va.Code,* 11–5–1 [1961], provides, in part, as follows:

> All personal property belonging to persons residing in this State, whether such property be in or out of the State, and all personal property in the State, though owned by persons residing out of the State, shall be entered in the personal property book, and be subject to equal and uniform taxation ... unless especially exempted by law.

Furthermore, *W.Va.Code,* 11–5–3 [1961], provides, in part, as follows:

> The words 'personal property,' as used in this chapter, shall include all fixtures attached to land, if not included in the valuation of such land entered in the proper land book; all things of value, moveable and tangible, which are the subjects of ownership; all chattels, real and personal; all notes, bonds, and accounts receivable, stocks and other intangible property.

Finally, *W.Va.Code,* 11–5–4 [1972], provides, in part, as follows:

> [I]n cases of the assessment of leasehold estates a sum equal to the valuations placed upon such leasehold estates shall be deducted from the total value of the estate, to the end that the valuation of such leasehold estate and the remainder shall aggregate the true and actual value of the estate.

**13.** It should be noted that *W.Va.Code,* 11–3–9 [1973], further exempts from taxation "property used for area economic development purposes by nonprofit corporations when such property is not leased out for profit...."

**14.** With respect to the above assertion of the corporation, this Court in *Greene Line Terminal Co.* stated as follows: "The answer to this proposition must depend on whether the complainant is operating the wharf primarily as a public service, or as a private enterprise for profit. If the former, the exemption carries through to the lessee; if the latter, the exemption does not apply." 122 W.Va. at 486, 10 S.E.2d at 904.

service rendered by the lessee is only incidental to a business for profit.

122 W.Va. at 488–89, 10 S.E.2d at 905.

Specifically, this Court, in *Greene Line Terminal Co.*, held in syllabus point 1 as follows:

> Under Code, 11–3–9, which exempts from taxation "property belonging exclusively to any county, district, city, village, or town in this state, and used for public purposes," a leasehold on a city-owned wharf is not exempt from taxation, where the lessee operates the wharf on a personal profit basis, though public convenience is thereby served.

*See State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 207 S.E.2d 113 (1973), discussing "public purpose."

The property sought to be taxed in *Greene Line Terminal Co.* was a "leasehold." 122 W.Va. at 484, 10 S.E.2d at 903. In that action, this Court discussed the nature of the leasehold interest: "A leasehold, separate from the fee from which it has been carved, is property 'which the law recognizes as a thing of value, but is incorporeal and intangible in its nature.' ... A leasehold is an 'estate in realty held under a lease.'" 122 W.Va. at 484, 10 S.E.2d at 903.

We find our decision in *Greene Line Terminal Co.*, persuasive. In that action, as above indicated, this Court held the statutory exemption provided by *W.Va.Code*, 11–3–9 [1933], inapplicable to the corporation's leasehold interest. Inasmuch as the public service rendered by the lessee (the operation of a public wharf) was "incidental to a business for profit," the exemption from taxation of the city in *Greene Line Terminal Co.* did not "carry through for the benefit of the owner of the leasehold." 122 W.Va. at 489, 10 S.E.2d at 905. Thus, the incidental promotion of public service or public convenience by the lessee's operation of the wharf was not, in that action, dispositive of the exemption question. The fact that the lessee operated a business for profit was emphasized. *See* n. 14, *supra*.

■ In the action now before this Court, the appellee, as lessee, occupied the proper-

ty pursuant to the lease agreement "the same as the absolute owner thereof." *See* n. 7, *supra*. Furthermore, that agreement provided that, during the term of the lease, the county could not "sell, convey or in any manner dispose of the leased property." *See* n. 7, *supra*. During the period in question, the appellee operated a commercial warehouse facility upon the property.

Consistent with our holding in *Greene Line Terminal Co.*, we do not believe, in this action, that the public service aspect of the appellee's business is dispositive of the exemption question. While we recognize that the operation of the appellee's warehouse facility may have lessened the problem of local unemployment, the appellee used its leasehold interest, primarily, to maintain a commercial enterprise. The appellee may justifiably be required to share in the tax burden, and the assessment of the Assessor of Kanawha County was not improper.

In Annot., 54 A.L.R.3d 402 (1974), at 513, the general rule is stated:

> [I]t is quite generally held that a lessee who has an interest in property which is subjected to tax is not entitled to exemption from taxation by the mere fact that he holds the property by lease from an organization or institution which would be entitled to tax exemption for the property if it directly made use of the property for its exempt purposes.

Upon all the above, we hold that a county assessment for ad valorem tax purposes of a leasehold interest in county property was not prohibited by the provisions of *W.Va. Code*, 13–2C–15 [1963], of the Industrial Development Bond Act, *W.Va.Code*, 13–2C–1 [1963], *et seq.* (now known as the "Industrial Development and Commercial Development Bond Act"), which section sets forth certain exemptions from taxation, where the leasehold in question was established under the Industrial Development Bond Act with the county as lessor of the property and a private corporation as lessee, and where a commercial warehouse facility was operated upon the property by

the lessee.[15]

In so holding, we again note that the exemption statute in question, *W. Va. Code*, 13–2C–15 [1963], has a constitutional origin. That constitutional provision, quoted above, provides that "public property" may be exempted from taxation. As we indicated in *Greene Line Terminal Co.* and in *Great A & P Tea Co.*, a leasehold interest in property may be treated separately from the fee interest for tax purposes. In this action, the fee interest, owned by the county, is clearly public property. The leasehold interest, however, was an interest acquired by a private party, the appellee, for commercial purposes. Therefore, inasmuch as this action concerns only the appellee's leasehold interest, the assessment is contrary neither to the above provision of this State's constitution nor to the provisions of *W. Va. Code*, 13–2C–15 [1963]. This Court in *In re: Hillcrest Memorial Gardens, supra,* stated as follows: "Taxation of all property, both real and personal, is the general rule fixed by constitutional mandate, while exemption from taxation constitutes the exception." 146 W.Va. at 342, 119 S.E.2d at 756.

Nor does the denial of the tax exemption with respect to the assessment in question controvert the purpose of the Industrial Development Bond Act, which purpose was to promote industrial development in this State and lessen the problem of unemployment. *W. Va. Code*, 13–2C–15 [1963], provides that "revenue bonds issued pursuant to this article and the income therefrom shall be exempt from taxation except inheritance, estate, and transfer taxes...." Furthermore, by our decision in this action we do not state that a leasehold interest under the Industrial Development Bond Act may not qualify for an exemption under *W. Va. Code*, 13–2C–15 [1963]. Rather, the leasehold interest in question, under which the appellee operated a commercial warehouse facility, and similar uses of leasehold interests under the Act, do not qualify for the exemption. In considering the exemption provisions of *W. Va. Code*, 11–3–9 [1933], we indicated in *Greene Line Terminal Co.* that the answer to the exemption question depended upon whether the leasehold interest was used "primarily as a public service, or as a private enterprise for profit." *See* n. 14, *supra.*

A result contrary to our holding under the circumstances of this action would

---

**15.** The decisions cited below of the Supreme Court of Ohio, although somewhat distinguishable from this action, serve to illuminate our reasoning that the leasehold interest in question does not qualify for the tax exemption.

In *Board of Park Commissioners of City of Troy v. Board of Tax Appeals,* 160 Ohio St. 451, 116 N.E.2d 725 (1954), the Supreme Court of Ohio cited an Ohio constitutional provision which stated that "the General Assembly may exempt from taxation *public property used exclusively for any public purpose.*" 160 Ohio St. at 453, 116 N.E.2d at 727 (emphasis in original). In that action, the Court held that a statutory tax exemption did not apply to property leased to a corporation by a municipality for purposes of promoting public entertainment.

Similarly, a statutory tax exemption was denied in *Carney v. City of Cleveland,* 173 Ohio St. 56, 180 N.E.2d 14 (1962), which action involved the construction of aircraft hangars by private business enterprises upon municipal property. The Court noted as follows: "[T]he hangars were constructed by the lessees at their expense, under long-term leases from the city, are under their management and control, and are largely, if not exclusively, devoted to the private purposes of the lessees in connection with their businesses." 173 Ohio St. at 58, 180 N.E.2d at 16.

Tax exempt status was also denied in *Cleveland v. Perk,* 29 Ohio St.2d 161, 280 N.E.2d 653 (1972), with respect to certain areas of an airport leased from the City of Cleveland by private entities and used, for *inter alia,* "a lounge bar, drugstore, newsstand, barbershop, gift shop, and insurance counters...." 29 Ohio St.2d at 162, 280 N.E.2d at 654. Syllabus point 2 of *Cleveland v. Perk* states as follows:

Where a possession of designated portions of property belonging to a municipal corporation is transferred for stated periods of time and for fixed rentals to private entities, who *pro tempore* enjoy the right to occupy, manage and operate the same in part for their own purposes and profit, the designated portions of the property so occupied thereby lose their identity as *public* property used *exclusively* for a public purpose and are not exempt from taxation. (citations omitted—emphasis in original)

*See also Burger v. City of Beatrice,* 181 Neb. 213, 147 N.W.2d 784 (1967), holding that the sale of water by a city outside its corporate limits to a private person, corporation or industry for private purposes is not a public use within the meaning of the doctrine of eminent domain.

erode the language of this State's Constitution that "taxation shall be equal and uniform" and would expand the "public property" exemption to impermissible limits. Exemption statutes threaten to lessen that constitutionally required equality and uniformity in taxation and should, therefore, be strictly construed. As this Court indicated in *State v. Kittle, supra,* equality and uniformity in taxation aids in placing "the public burdens, as nearly as may be, upon all property and citizens alike." *See* n. 11, *supra.*

This Court has consistently followed the concept of strict construction of tax exemptions. As indicated above, that concept is derived from this State's constitution. We see nothing in West Virginia case law upon which the appellee could have relied to support its theory of exemption, particularly in view of the language of *Demus* that *W. Va. Code,* 13–2C–15 [1963], is merely constitutional and our holding in *Greene Line Terminal Co.*

Upon all of the above, the final order of the Circuit Court of Kanawha County, West Virginia, is hereby reversed and this action is remanded to that court for proceedings consistent with this opinion.

Reversed and remanded.