IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

**FILED**

**October 26, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-0934

UNIVERSITY PARK AT EVANSDALE, LLC,

Petitioner/Petitioner Below

v.

MARK A. MUSICK, in his capacity as the
Monongalia County, West Virginia, Assessor,

Respondent/Defendant Below

Appeal from the Circuit Court of Monongalia County
The Honorable Lawrence S. Miller, Jr., Judge
Civil Action No. 15-CAP-8

REVERSED AND REMANDED

Submitted: October 11, 2016
Filed: October 26, 2016

James A. Walls, Esq.
Joseph V. Schaeffer, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Attorneys for Petitioner

John A. Mairs, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Attorney for Amicus Curiae West Virginia University
Board of Governors

Phillip M. Magro, Esq.
Magro & Magro
Morgantown, West Virginia
Attorney for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

2.      "The county assessor may presume that leaseholds have no value independent of the freehold estate and proceed to tax all real property to the freeholder at its true and actual value; the burden of showing that a leasehold has an independent value is upon the freehold taxpayer and the taxpayer must request in a timely manner the separate listing of freehold and leasehold interests." Syl. Pt. 2, *Great A & P Tea Co. v. Davis*, 167 W. Va. 53, 278 S.E.2d 352 (1981).

3.      "The assessor of a county may assess the value of a leasehold as personal property separately in an amount such that when the value of the freehold subject to the lease is combined with the value of the leasehold the total reflects the true and actual value of the real property involved."  Syl. Pt. 1, *Great A & P Co. v. Davis*, 167 W. Va. 53, 278 S.E.2d 352 (1981).

4.      "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. Pt. 1, *Miners in General Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941),

i

*overruled on other grounds, State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W.Va. 227, 744 S.E.2d 625 (2013).

5.    A taxpayer's challenge to whether a leasehold has separate, independent value presents an issue of valuation, not taxability, and is properly presented to the county commission, sitting as a board of equalization and review, pursuant to West Virginia Code § 11-3-24 (2010).

WORKMAN, Justice:

This is an appeal from the circuit court's August 26, 2015, order denying petitioner University Park at Evansdale, LLC's (hereinafter "UPE") appeal from the decision of the Monongalia County Commission, sitting as the Board of Equalization and Review (hereinafter "BER"). UPE protested respondent Monongalia County Assessor's (hereinafter "respondent") assessment of its leasehold interest in certain property to the BER, which affirmed respondent's assessment on the basis that UPE's protest presented an issue of taxability, rather than valuation, reviewable only by the State Tax Commissioner (hereinafter "Tax Commissioner"). Upon appeal of that decision, the circuit court agreed, finding that UPE "sought review before the wrong forum," thereby denying the Tax Commissioner "its statutory right and obligation to decide [the] issue first[.]"

Based upon our review of the briefs, legal authorities, appendix record, and upon consideration of arguments of counsel, we find that the circuit court erred in concluding that UPE's protest presented an issue of taxability and therefore reverse and remand for further proceedings pertaining to the merits of UPE's appeal as to the assessor's method of and conclusions regarding the valuation of UPE's leasehold interest.

## I. FACTS AND PROCEDURAL HISTORY

UPE is the lessor of certain property located on the Evansdale Campus of West Virginia University, which property is owned by the West Virginia University

1

Board of Governors (hereinafter "WVU"). The property is commonly known as "University Park" and contains student housing facilities and a small portion of retail space.[1] In January 2015, respondent assessed UPE's leasehold interest in University Park at $9,035,617 for the tax year 2015; the fee estate owned by WVU is not taxable inasmuch as it is property belonging to the State.[2] UPE challenged the assessment before the BER, arguing that its leasehold interest was $0 because the leasehold was neither freely assignable nor a bargain lease.

At the BER hearing, respondent agreed that UPE's lease did not appear to be freely assignable because the lease reserves to WVU the right to reject any potential lessor of the retail space. Respondent further appeared to agree that, despite his initial belief, the property was not a "bargain lease."[3] Finally, respondent agreed that he did not utilize the methodology promulgated by the Tax Commissioner for assessment of

---

[1] WVU leased the property to UPE for the development and construction of University Park; upon completion, UPE leased the student housing properties back to WVU for purposes of offering it to students for housing and retained the ability to sub-lease the retail space, which comprises only approximately 3% of the property.

[2] *See* West Virginia Code § 11-3-9(a)(2) (2015) (exempting property belonging exclusively to the State from ad valorem taxes).

[3] Respondent was equivocal on this issue, initially stating that he believed it was a bargain lease, but then agreeing with counsel's leading question indicating that respondent concluded it was not a bargain lease.

leasehold interests.[4]  Despite this testimony, the BER concluded that since UPE was arguing that the valuation should be $0 and therefore not "taxable," its protest presented an issue of taxability and *not* valuation.  Inasmuch as taxability issues must be protested to the Tax Commissioner, the BER concluded that UPE presented its protest in the wrong forum and that it lacked jurisdiction.  The BER encouraged UPE to appeal the issue to the circuit court, which it did.[5]

The circuit court agreed that the issue presented was one of taxability, rather than valuation.  Specifically, the circuit court discussed at length this Court's opinion in *Maplewood Community, Inc. v. Craig*, 216 W. Va. 273, 607 S.E.2d 379 (2004), which remanded a challenge to a leasehold tax assessment to the circuit court and its discussion makes reference to the "taxability" of the leasehold interest.  From the use of that terminology, the circuit court inferred that such a challenge indeed went to "taxability" rather than "valuation."  The circuit court then expressly stated that the issue was one of taxability because "[i]n order to be taxable, the leasehold interest must have a value separate and apart from the freehold estate. . . . A resolution of that question

---

[4] UPE contends the method used to reach the assessment in this case was the methodology to be used for *fee* interests, and not leaseholds.

[5] UPE represented to the circuit court that subsequent to its decision herein, the BER reversed course and found an identical challenge to the similarly-situated College Park property to be an issue of *valuation* and conceded jurisdiction to hear the protest.  Counsel attributed the BER's change of heart to a "learning curve."  The circuit court declined to consider this information inasmuch as it was not part of the record presented to it.

answers whether the leasehold interest is taxable." Therefore, the circuit court concluded, by asserting the leasehold had *no value*, which therefore rendered it *not taxable*, UPE was advancing a taxability challenge which the BER had no jurisdiction to decide and therefore had properly denied the protest. The circuit court likewise denied the appeal on the same basis. The circuit court explicitly stated in its order that ***"[t]his Court is NOT making a ruling that the property is taxable or is not taxable because the statutory procedures, which would have required the input of the State Tax Commissioner were not followed***." (emphasis in original).[6] This appeal followed.

## II. STANDARD OF REVIEW

UPE sought relief from the circuit court pursuant to West Virginia Code § 11-3-25 (2014) which governs the appeal of allegedly erroneous assessments which have first been presented to the BER or Tax Commissioner, as appropriate. *See* W. Va. Code §§ 11-3-24 and -24a (2010). This Court has stated that "our review of a circuit court's ruling in proceedings under § 11-3-25 is *de novo*." *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W. Va. 250, 255, 539 S.E.2d 757, 762 (2000). Moreover, the issue presented herein requires us to ascertain whether UPE presented a challenge to "valuation" or "taxation," as such terms are used in the applicable statute; accordingly, our review is plenary. Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*

---

[6] The circuit court reiterated elsewhere in its order that "[b]ecause this Court finds that the resolution of that issue resolves the appeal, the Court does not need to consider the [sic] whether the assessed value was erroneous."

4

*of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). With this standard in mind, we turn to the parties' arguments.

## III. DISCUSSION

UPE makes three assignments of error. UPE first contends that the circuit court erred in finding that UPE asserted a challenge to taxability, rather than valuation, and therefore presented its protest in the wrong forum, depriving the reviewing body of jurisdiction. UPE's second and third assignments of error maintain that the circuit court erred by failing to "correct and fix the erroneous assessment," in that 1) the leasehold had no independent value because it was neither freely assignable nor a bargain lease; and 2) respondent admitted he did not use established procedures for valuing leaseholds.

*Assessment of Leasehold Interests and Challenges to Assessments*

With respect to assessment of leaseholds in general, West Virginia Code § 11-5-4 (1972) provides:

> . . . [I]n cases of the assessment of leasehold estates a sum equal to the valuations placed upon such leasehold estates shall be deducted from the total value of the estate, to the end that the valuation of such leasehold estate and the remainder shall aggregate the true and actual value of the estate.

In that regard, this Court has held that

> [t]he county assessor *may presume that leaseholds have no value independent of the freehold estate* and proceed to tax all real property to the freeholder at its true and actual value; the burden of showing that a leasehold has an independent value

5

is upon the freehold taxpayer and the taxpayer must request in a timely manner the separate listing of freehold and leasehold interests.[7]

Syl. Pt. 2, *Great A & P Tea Co. v. Davis*, 167 W. Va. 53, 278 S.E.2d 352 (1981) (footnote added). The Court in *Great A & P* explained that ordinarily the freehold should bear the entirety of the tax assessment because "[u]nder ordinary conditions the freehold estate will not be reduced in value by virtue of [a short-term] leasehold, nor will the leasehold itself have any ascertainable market value." 167 W. Va. at 56, 278 S.E.2d at 355. Therefore, "when assessors assess freeholds subject to leaseholds the property is usually fully taxed." *Id.*

On the other hand, however, the Court in *Great A & P* noted that with respect to long-term leases, "changed business conditions" and/or "persistent inflation" may make long-term leases "marketable assets of value." *Id.* Therefore, since the freehold is encumbered by a long-term lease, its "market value is reduced in exact proportion to the value of the leasehold and, therefore, if the real property subject to the leasehold is to be taxed at its 'true and actual value,'" the assessor must tax both

---

[7] UPE argued below that the assessment was void *ab initio* because it was not requested by the freeholder as per this syllabus point. The circuit court rejected this contention, noting that WVU, as a public entity, is not a "taxpayer" and therefore had no incentive to request separate taxation to the leaseholder. This issue was not assigned as error and is therefore not before the Court. The parties made additional purportedly dispositive arguments that the circuit court rejected, but none were appealed by either party.

separately. *Id.* Therefore, when a leasehold is determined to have separate, independent value, this Court has held, consistent with the statute above:

> The assessor of a county may assess the value of a leasehold as personal property separately in an amount such that when the value of the freehold subject to the lease is combined with the value of the leasehold the total reflects the true and actual value of the real property involved.

Syl. Pt. 1, *Great A & P,* 167 W. Va. 53, 278 S.E.2d 352. Although this Court has not issued a syllabus point prescribing how leaseholds must be valued, we noted in *Maplewood* that the Tax Commissioner had developed an eight-step process for valuing leaseholds which requires at the outset "an initial determination . . . whether the lessee has a marketable right to assign or transfer the lease." 216 W. Va. at 286, 607 S.E.2d at 392.[8]

With this backdrop to our analysis, the parties appear to agree that if a challenge to an assessment presents an issue of *taxability*, statutory procedure requires the aggrieved taxpayer to first make objection to the assessor and then, if not satisfactorily resolved, demand that the issue be presented to the Tax Commissioner.

---

[8] The *Maplewood* Court, ostensibly quoting this policy, explained further that "'the separate value of a leasehold, if any, is based on whether the leasehold is economically advantageous to the lessee, that is a so-called bargain lease, and is freely assignable so that the lessee may realize the benefit of such bargain in the market place.'" 216 W. Va. at 286, 607 S.E.2d at 392 (quoting "Valuation of Leasehold Interests," State Tax Commissioner's Annual In-Service Training Seminar for Assessors, June 14, 1989."). The circuit court maintains this language is not actually contained in the referenced seminar materials and was "mis-cited" in the opinion. Because this issue is not relevant to our resolution of the narrow issue presently before us, we decline to examine it further at this juncture.

7

West Virginia Code § 11-3-24a(a) provides that if a taxpayer "believes that the property is exempt or otherwise not subject to taxation," the taxpayer may object in writing to the assessor, who then must either sustain or refuse the protest. Should this step fail to resolve the dispute, "[t]he assessor may, and if the taxpayer requests, the assessor shall, certify the question to the State Tax Commissioner[.]" W. Va. Code § 11-3-24a(b). The Tax Commissioner must then "instruct the assessor as to how the property shall be treated" whereupon the taxpayer, if aggrieved by the Tax Commissioner's findings, may appeal to circuit court. W. Va. Code § 11-3-24a(c). Moreover, West Virginia Code § 11-3-24(c) states that "in no case shall any question of classification or *taxability* be considered or reviewed by the [BER]." (emphasis added).

If, however, an aggrieved taxpayer takes issue with the *valuation* of its property, such a challenge lies exclusively with the BER. West Virginia Code § 11-3-24(a) (2010) provides that the county commission, sitting as a board of equalization and review, shall meet annually for the purpose of reviewing and equalizing the assessment made by the county assessor. The BER must review the property books and

> *shall correct all errors in the* names of persons, in the description and *valuation of property*, and shall cause to be done whatever else is necessary to make the assessed valuations comply with the provisions of this chapter.

W. Va. Code § 11-3-24(c) (emphasis added). West Virginia Code § 11-3-24(f) states that any person may appear before the BER to object to a "proposed increase in the valuation of taxpayer's property." Neither "taxability" nor "valuation" is expressly defined as

8

pertains to these statutory procedures. Our analysis is therefore guided by this well-established precept: "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. Pt. 1, *Miners in General Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds, State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W.Va. 227, 744 S.E.2d 625 (2013).

*Taxation v. Valuation*

The circuit court agreed with the BER's conclusion that, when a taxpayer asserts that its leasehold interest should be valued at $0, this position makes the challenge one of "taxation," rather than "valuation." As indicated above, the circuit court relied in part on the usage of the term "taxability" in the *Maplewood* case, discussed more fully *infra*, to reach this conclusion. The circuit court also heavily relied upon *dicta* from *Great A & P* which states: "It would appear from the statutory scheme that a separate leasehold is *taxable* if it has a separate and independent value from the freehold." 167 W. Va. at 55, 278 S.E.2d at 355 (emphasis added). The circuit court concluded that since UPE challenged whether the leasehold had a value independent of the freehold, "[a] resolution of that question answers whether the leasehold interest is *taxable*." (emphasis added).

9

Before this Court, UPE argues that "[a] claim of absence of value is as much a challenge to valuation as is a claim of value of 1¢; contrary to the BER and Circuit Court's holdings, there is no tipping point at which a taxpayer's challenge to an assessment is converted from one of valuation to one of taxability." UPE argues further that this Court's use of the term "taxability" in its opinions is a mere colloquialism or "short-cut" to refer to the collective process of tax assessment, levy, and collection and has no particular meaning, unless otherwise ascribed in the opinion.[9] Respondent offers nothing more than the circuit court's analysis in support of his position.[10] However, in an unusual turn, both UPE and the circuit court posit that *Maplewood* supports their competing positions and is dispositive. The circuit court found that its *dicta* suggested that a challenge to the assessment of a leasehold interest goes to taxability, whereas UPE argues the *Maplewood* Court tacitly approved of the procedural forum it pursued in this case. It is therefore appropriate to examine *Maplewood* in greater detail.

---

[9] WVU, as *amicus curiae* in this matter, filed a brief in support of UPE's position, reiterating its general argument that there is a distinction between "exemption from taxation and valuation for taxation at zero value." WVU represents that the lease agreement with UPE was structured with the *Maplewood* leasehold valuation assessment model—requiring a freely assignable lease and bargain lease before the leasehold is deemed to have value—in mind. Therefore, WVU submits that undermining *Maplewood* would lead to legal and regulatory instability. The Court expresses its appreciation for the amicus curiae's contribution to this matter.

[10] Respondent filed a summary response which offered no original argument or analysis; rather, aside from scant stylistic changes, it was a verbatim reiteration of the circuit court's order.

*Maplewood* was an appeal of two consolidated cases; the Mon Elder appeal addressed therein being pertinent to our analysis. Mon Elder operated a non-profit senior living community owned by the Monongalia County Building Commission; the Building Commission leased the community back to Mon Elder to amortize the principal and interest on tax exempt bonds which funded its construction. 216 W. Va. at 277-78, 607 S.E.2d at 383-84. The Monongalia County Assessor issued an *ad valorem* property tax assessment against Mon Elder for its leasehold interest, which Mon Elder protested to *both* the BER and the Tax Commissioner. *Id.* at 279, 607 S.E.2d at 385. Before the Tax Commissioner, Mon Elder argued that it was entitled to a charitable *exemption* from taxation. *Id.* The Tax Commissioner ruled that it did not have sufficient information to determine that the property was used exclusively for charitable purposes and the BER contemporaneously affirmed the assessments;[11] both of these decisions were appealed to the circuit court, which found that Mon Elder failed to meet its burden of proof. *Id.* Mon Elder appealed to this Court arguing 1) that it qualified for a charitable exemption; and 2) that the circuit court failed to rule on its contention that its leasehold interest had no independent, assessable value. *Id.*

As pertains to the latter issue, as indicated above, the *Maplewood* Court discussed that the Tax Commissioner had developed an eight-step process for valuing leasehold interests involving a determination of whether the lease was "freely assignable"

___

[11] It is not clear on what basis the BER affirmed the assessment.

11

and a "so-called bargain lease."[12] *Id.* at 286, 607 S.E.2d at 392. Mon Elder argued that it put on evidence below that the lease was neither, but the circuit court failed to address the issue. *Id.* The *Maplewood* Court stated that "[b]ecause the lower court did not address this issue of whether the lease has separately assessable value, we have no factual determinations upon which to base any review of this issue." *Id.* at 287, 607 S.E.2d at 393. This Court then remanded to the circuit court for further proceedings to determine whether the leasehold had separate, independent value.

UPE maintains that *Maplewood* "tacitly held that challenges like [its] are to valuation[.]" UPE argues that by remanding to the circuit court for findings regarding whether its leasehold had separate value, the Court was implicitly finding that such was an issue of valuation, properly brought before the BER and remanded to the circuit court for review of the BER's findings. UPE notes that before the BER and circuit court, it "made the exact same argument as Mon Elder—lack of separate assessable value of its leasehold interest[.]" However, it is obvious from our opinion in *Maplewood* that the issue of whether Mon Elder had presented its protest in the proper procedural forum in the first instance was neither raised by the parties nor addressed by this Court.

The circuit court likewise stretches *Maplewood* beyond its borders. The circuit court found that *Maplewood* implicitly suggested that a challenge asserting that a leasehold interest has no independent value is one of taxation. In support, the circuit

---

[12] *See* n.8, *supra*.

12

court cited the section contained in *Maplewood* which addressed the leasehold interest, entitled "*Taxability* of Mon Elder's Leasehold Interest." *Id*. at 286, 607 S.E.2d at 392 (emphasis added). The circuit court further cited the following *dicta* from *Maplewood*: "'According to Mon Elder, only when the record affirmatively establishes that the lease has acquired marketable value separate from the underlying property can such a leasehold be *subject to taxation*.'" *Id*. (emphasis in order). However, this Court has made clear that "[o]biter dicta or strong expressions in an opinion, where such language was not necessary to a decision of the case, will not establish a precedent." *In re Assessment of Kanawha Valley Bank*, 144 W.Va. 346, 382-83, 109 S.E.2d 649, 669 (1959). We tend to agree with UPE's characterization of this *dicta* as a broad reference to the multi-faceted concept of taxation, generally.[13] The circuit court also made much of the fact that the Tax Commissioner was a party to the Mon Elder appeal and had been provided "with its statutory right and obligation" to "decide [the] issue first," unlike the case *sub judice*. However, there is no indication in *Maplewood* that the Tax Commissioner had been presented with the leasehold valuation question or addressed anything other than the

---

[13] The circuit court further noted that the *Maplewood* Court did not decide whether the leasehold had independent value, but instead remanded the case back to the circuit court to make findings of fact and conclusions of law "regarding the *taxability* of the leasehold interest." (emphasis in order). The circuit court takes great liberty with our language regarding remand. The *Maplewood* Court actually stated regarding remand: "Accordingly, we remand this issue of whether the lease agreement between Mon Elder and the Building Commission has value independent of the property at issue to the circuit court for further proceedings." *Id*. at 287, 607 S.E.2d at 393. We made no reference therein to remand for further proceedings on "taxability." On remand, the circuit court in *Maplewood* determined that the Mon Elder leasehold was neither freely assignable nor a bargain lease.

13

charitable exemption issue, which is plainly an issue of taxation. We therefore conclude that *Maplewood* neither addresses nor supports either party's position on whether the challenge herein is one of valuation or taxation and therefore lends little to our analysis.

Therefore, upon consideration of the parties' arguments, we find UPE's position compelling and conclude that a taxpayer's challenge to whether a leasehold has separate, independent value presents an issue of valuation, not taxability, and is properly presented to the BER pursuant to West Virginia Code § 11-3-24. UPE does not contend that its property is exempt from taxation, either categorically or as the result of a specific statutory exemption; it contends that respondent erroneously assessed its value. UPE's objection to the assessment maintains that properly assessed, the leasehold's value would be $0 because it is not "marketable" as that term is described in *Maplewood*. West Virginia Code § 11-3-24(c) broadly relegates to the BER the burden of correcting "errors in . . . valuation of property[.]"[14]

The circuit court's logic, although understandable, is flawed: although it is true that a leasehold is taxable only if it has a value independent of the freehold, it

---

[14] The circuit court makes an excruciatingly fine distinction in its order that essentially states that determining *whether* a leasehold has independent value is a step that precedes determining what that value actually *is*. The former, according to the circuit court, is an issue of taxation, the latter arguably valuation. While semantically, this distinction may hold water, it artificially parses the issue too thin. The statutory language relegates to the assessor, generally, issues of "valuation of property." It makes no distinction between the issues of whether property has value and what that value is, as the circuit court did.

14

necessarily follows that one must *first determine whether it has value,* to then ascertain taxability. Valuation is precisely what UPE challenged before the BER. Although a $0 valuation may result in a lack of taxability, this threshold issue is distinct and squarely within the BER's purview. The *dicta* upon which the circuit court relies compels the same conclusion: our statement in *Great A & P* that "[i]t would appear from the statutory scheme that a separate leasehold is *taxable* if it has a separate and independent value from the freehold" plainly contains an imbedded, *threshold* issue of whether a leasehold has a "separate and independent value." 167 W. Va. at 55, 278 S.E.2d at 355. We therefore find that the circuit court erred in concluding that UPE improperly advanced its protest to the leasehold tax assessment before the BER.

Finally, although *Maplewood* provides no utility in resolving the issue above, it does provide authority for the proposition that where, as here, the circuit court makes no findings regarding whether the leasehold has independent value, this Court has nothing to review: "Because the lower court did not address this issue of whether the lease has separately assessable value, we have no factual determinations upon which to base any review of this issue. Absent these necessary factual rulings, we cannot perform any meaningful appellate review of this issue." *Maplewood*, 216 W. Va. at 287, 607 S.E.2d at 393. [15] The order below makes very clear that the circuit court did not reach the

---

[15] UPE insists that our opinion in *Am. Bituminous Power Partners* permits this Court to correct the purportedly erroneous assessment at this juncture. However, the (continued . . .)

issue of whether the leasehold was erroneously valued because it found that UPE advanced a challenge that the BER had no jurisdiction to review. Therefore, this Court has nothing from the circuit court upon which to base a review of whether the assessment was in fact erroneous, as asserted in UPE's remaining assignments of error. We therefore remand to the circuit court for findings on those issues.[16]

## IV. CONCLUSION

For the reasons stated herein, we therefore reverse the circuit court's August 26, 2015, order and remand for further proceedings consistent with this opinion.

Reversed and remanded.

---

opportunity to grant relief from an erroneous assessment, if any, resides first with the circuit court pursuant to West Virginia Code § 11-3-25.

[16] As an appeal from the BER, the circuit court's review on appeal (and therefore on remand) is limited to the record created before the BER and the circuit court operates under the same standard of review as that for an administrative appeal. *See* W. Va. Code § 11-3-25(c) ("If there was an appearance by or on behalf of the taxpayer before either board, or if actual notice, certified by the board, was given to the taxpayer, the appeal, when allowed by the court or judge, in vacation, shall be determined by the court from the record as so certified[.]"); *Am. Bituminous Power Partners*, *L.P.*, 208 W. Va. at 255, 539 S.E.2d at 762 ("[J]udicial review of a decision of a board of equalization and review regarding a challenged tax-assessment valuation is limited to roughly the same scope permitted under the West Virginia Administrative Procedures Act[.]") *But see* W. Va. Code § 11-3-25(c) (outlining circumstances under which circuit court may remand to BER for development of the record).