# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2018 Term

_____

**FILED**

**November 8, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 17-0309

_____

MARK A. MUSICK, in his capacity as
the Monongalia County, West Virginia, Assessor,
Respondent Below, Petitioner,

v.

UNIVERSITY PARK AT EVANSDALE, LLC,
Petitioner Below, Respondent.

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Lawrance S. Miller, Jr., Judge
Civil Action No. 15-CAP-8

AFFIRMED

_____

Submitted: October 9, 2018
Filed:  November 8, 2018

Webster J. Arceneaux, III, Esq.
Lori D. Counts-Smith, Esq.
Lewis, Glasser, Casey & Rollins, PLLC
Charleston, West Virginia

Phillip M. Magro, Esq.
Assistant Prosecuting Attorney
Magro & Magro
Morgantown, West Virginia
Counsel for the Petitioner

James A. Walls, Esq.
Joseph V. Schaeffer, Esq.
Spilman Thomas & Battle PLLC
Morgantown, West Virginia
Counsel for the Respondent

John A. Mairs, Esq.
Christopher M. Hunter, Esq.
JACKSON KELLY PLLC
Charleston, West Virginia
Counsel for Amicus Curiae
West Virginia University Board of
Governors

Patrick Morrisey, Esq.
Attorney General
Thomas M. Johnson, Jr., Esq.
Deputy Solicitor General
Joshua L. Jarrell, Esq.
General Counsel, West Virginia
Department of Commerce
Charleston, West Virginia
Counsel for Amicus Curiae West Virginia
Development Office

JUSTICE WALKER delivered the Opinion of the Court.
JUSTICE ALLEN H. LOUGHRY, II, suspended and therefore not participating.
JUSTICE PAUL T. FARRELL, sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "'It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct.  The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear.'  Syl. pt. 7, *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 (1983)." Syllabus Point 1, *Western Pocahontas Properties, Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993).

2.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

3.      "The county assessor may presume that leaseholds have no value independent of the freehold estate and proceed to tax all real property to the freeholder at its true and actual value; the burden of showing that a leasehold has an independent value is upon the freehold taxpayer and the taxpayer must request in a timely manner the separate listing of freehold and leasehold interests."  Syllabus Point 2, *Great A&P Tea Co., Inc. v. Davis*, 167 W. Va. 53, 278 S.E.2d 352 (1981).

4.      "An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare

i

decisis, which is to promote certainty, stability, and uniformity in the law." Syllabus

Point 2, *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974).

WALKER, JUSTICE:

In 2013, West Virginia University (WVU) leased property to University Park at Evansdale, LLC (UPE) for the development of University Park, a student housing facility. On the same date, UPE subleased the student housing back to WVU for purposes of offering it to students for housing. As a result, the residential facilities of University Park are managed and operated solely by WVU. The sublease from UPE to WVU did not include certain retail/commercial premises, which UPE may use or sublease subject to WVU's approval. We consider for the second time[1] the disagreement between the Assessor of Monongalia County, Mark A. Musick, and UPE regarding a 2015 assessment that valued UPE's leasehold interest in University Park at more than $9 million. Mr. Musick appeals the circuit court's decision that based on the evidence presented at the Board of Equalization and Review (BER), the assessment of UPE's leasehold interest for tax year 2015 was $0.

Mr. Musick's primary contention is that this Court's opinion in *Maplewood Community, Inc. v. Craig*[2] was incorrectly decided, and thus the circuit court's application of *Maplewood*'s rule as to valuation of leasehold interests was wrong. He

---

[1] In *University Park at Evansdale, LLC v. Musick*, 238 W.Va. 106, 792 S.E.2d 605 (2016) (*UPE I*), we considered the circuit court's denial of UPE's appeal from the Board of Review on the grounds that it lacked jurisdiction because the issue was one of taxation instead of valuation. We reversed the circuit court and remanded the case for a ruling on the valuation of the property, which is now before us.

[2] 216 W.Va. 273, 607 S.E.2d 379 (2004) (per curiam).

1

also contends that even if *Maplewood* is correct, the case should have been remanded to the BER for development of additional evidence. We disagree and affirm the circuit court's order because Mr. Musick contravened the requirements of both West Virginia Code of State Rules § 110-1P-3 and applicable case law in assessing UPE's leasehold interest.[3]

## I. FACTUAL AND PROCEDURAL BACKGROUND

UPE is the lessor of certain property commonly known as University Park located on the Evansdale Campus of West Virginia University. This property, owned by the West Virginia University Board of Governors, contains student housing facilities and a small amount of retail space.[4] WVU leased the property to UPE for the development and construction of University Park, and UPE simultaneously subleased the student housing properties back to WVU for purposes of offering it to students for housing. In doing so, UPE retained the ability to sublease the retail space, which comprises only approximately three percent of the property.

---

[3] We acknowledge the Amicus Curiae brief filed by the West Virginia University Board of Governors in support of UPE urging affirmation of the circuit court's decision below. We also acknowledge the Amicus Curiae brief filed by the West Virginia Development Office in support of neither party.

[4] *UPE I*, 238 W. Va. at 108, 792 S.E.2d at 607.

As UPE explains, the terms of the December 23, 2013 lease provide that WVU lease the university land to UPE for an initial term of forty years, giving UPE a guaranteed option to renew the lease for a fifteen-year term, plus the remaining term of any outstanding leasehold deed of trust. If the guaranteed option to renew is exercised, UPE can exercise an additional ten-year renewal option with the consent of WVU. Pursuant to the lease, UPE's sole property interest in University Park is a leasehold interest.

Under the terms of the lease, UPE was required to develop improvements on the university land at its own expense, subject to approval from WVU. Ninety-seven percent of the improvements consists of residential premises for use by WVU as student housing, and the remaining three percent of the improvements consists of commercial premises providing amenities for WVU students, faculty, and staff. WVU immediately received title and ownership to the improvements and the personal property as they were constructed, with the exception of certain limited improvements and personal property belonging to subtenants of the commercial premises as they were brought onto the university land, which WVU already owned.

As a result, WVU owns the university land, the improvements, and the personal property, which together comprise University Park. Use of University Park is limited to WVU housing for students, faculty, and staff; commercial, retail, and

3

governmental enterprises benefitting WVU's constituents or the general public subject to WVU's written approval; and other expressly-defined permitted uses stipulated to by WVU under the lease.

UPE represents that under the specific terms of the December 23, 2013 sublease of the residential premises back to WVU, all residential premises at University Park are managed and operated solely by WVU as on-campus student housing and are subject to the same WVU policies, procedures, rental terms, and housing requirements that apply to residential tenants in other on-campus housing. UPE maintains that in addition, University Park is within the jurisdiction of and monitored by WVU Police. The sublease does not relate to the commercial premises, which UPE may use or sublease to permitted tenants for permitted uses subject to WVU's written approval.

As characterized by the circuit court's order, under the terms of the lease and sublease, WVU collects rents from tenants and pays one hundred percent of those revenues to UPE in consideration for the sublease. Additionally, UPE pays fifty percent of the net cash back to WVU (or more if revenues exceed the amount stated in the lease) in consideration for the lease.

In January 2015, Mr. Musick assessed UPE's leasehold interest in University Park at $9,035,617 for the tax year 2015. Because it is State property, the fee

estate owned by WVU is not taxable.[5] UPE challenged the assessment before the BER, arguing that because the leasehold was neither freely assignable nor a bargain lease, its leasehold interest was $0.[6]

At the BER hearing, Mr. Musick admitted that he did not utilize the methodology promulgated by the Tax Commissioner for assessment of leasehold interests.[7] Mr. Musick also agreed that UPE's lease did not appear to be freely assignable because the lease reserves to WVU the right to reject any potential lessor of the retail space.[8] And Mr. Musick appeared to agree that, despite his initial belief, the property

---

[5] *See* West Virginia Code § 11-3-9(a)(2) (2018) (exempting property belonging exclusively to State from ad valorem taxes).

[6] Article 28.1 of the lease states:

> Limitation: Consent Required. [UPE] may not, at any time, sell, assign, convey, or transfer (each, as applicable, a "Transfer") this Lease to another Person without the prior written consent of Lessor, which consent shall not be unreasonably withheld, conditioned, or delayed. As used herein, "Transfer" shall not include any subletting of the Leased Premises. Notwithstanding the foregoing, but subject to the provisions of Section 26.6.6, such restriction on Transfer shall not apply to a Leasehold Mortgagee or its nominee following the acquisition of the leasehold estate in a foreclosure sale or by deed in lieu of foreclosure.

[7] *UPE I,* 238 W. Va. at 108-09, 792 S.E.2d at 607-08. As we stated in *UPE I*, "UPE contends the method used to reach the assessment in this case was the methodology to be used for fee interests, and not leaseholds." *Id.* at 108 n. 4, 792 S.E.2d at 607 n. 4.

[8] *Id.* at 108-09, 792 S.E.2d at 607-08.

5

was not a bargain lease.[9]  Despite this testimony, the BER concluded that because UPE was asserting that the valuation should be $0 and therefore not taxable, the issue was one of taxability, not valuation.  Finding that issues of taxability must be challenged before the Tax Commissioner, the BER concluded that it lacked jurisdiction.  The BER encouraged UPE to appeal the issue to the circuit court and it did.[10]

In considering UPE's appeal, the circuit court initially found that because the issue was one of taxation instead of valuation, it lacked jurisdiction and UPE was required to appeal Mr. Musick's decision to the Tax Commissioner.  This Court disagreed, and found that UPE's appeal was a challenge to the valuation of the property, rather than a challenge to taxation, and remanded the matter to the circuit court for a ruling on the valuation of the property.[11]

On remand in the circuit court, Mr. Musick filed a motion to remand the matter to the BER seeking to develop the record regarding the issue of valuation and the viability of this Court's decision in *Maplewood*.  UPE objected to that motion on the

---

[9] *Id.*  As we stated in *UPE I*, "Respondent was equivocal on this issue, initially stating that he believed it was a bargain lease, but then agreeing with counsel's leading question indicating that respondent concluded it was not a bargain lease." *UPE I*, 238 W. Va. 106, 108 n. 3, 792 S.E.2d at 607 n. 3.

[10] *UPE I*, 238 W. Va. at 108-09, 792 S.E.2d at 607-08.

[11] *UPE I*, 238 W. Va. at 114, 792 S.E.2d at 613.

basis that it was not timely filed. During a January 23, 2017 hearing, the circuit court heard the arguments of the parties regarding valuation and Mr. Musick's motion to remand.

On February 28, 2017, the circuit court granted the petition for appeal in favor of UPE. The circuit court found that remand was not appropriate because the BER made its decision regarding taxability and jurisdiction after both parties were given a full opportunity to present evidence regarding valuation. The circuit court noted that a remand would allow Mr. Musick an opportunity to present evidence that "he perhaps should have presented before the BER[,]" and found that the remand exception found in West Virginia Code §11-3-25(c) is not designed to allow litigants an opportunity to present evidence they failed to present the first time.

The circuit court cited *Great A&P Tea Co. v. Davis* for the proposition that "a separate leasehold is taxable if it has separate and independent value from the free hold."[12] Then the circuit court acknowledged the analysis of the "separate value of a leasehold" we articulated in *Maplewood*:

> . . . the separate value of a leasehold, if any, is based on whether the leasehold is economically advantageous to the lessee, that is a so-called bargain lease, and is freely

---

[12] 167 W. Va. 53, 55, 278 S.E.2d, 352, 355 (1981).

assignable so that the lessee may realize the benefit of such bargain in the market place.[13]

In reviewing the evidence presented before the BER, the circuit court found that Mark Nesselroad, an attorney who had an ownership interest in UPE and was involved in creating the leasehold with WVU, testified that the lease held by UPE was not freely assignable. The circuit court also found that although Mr. Musick initially contended that the lease was freely assignable and a bargain lease, he later agreed that the lease could not be assigned without prior consent and conceded that the lease was not a bargain lease. So, the circuit court concluded that based upon the evidence presented at the BER hearing, Mr. Musick's 2015 assessment was erroneous, finding, "if a leasehold interest is not freely assignable and is not a bargain lease, it has no value independent of the freehold interest." The circuit court ruled that UPE's assessment for the 2015 tax year was $0. Mr. Musick now appeals the circuit court's order.

## II. STANDARD OF REVIEW

"'It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear.' Syl. pt. 7, *In re Tax Assessments Against Pocahontas Land Co*., 172 W.Va. 53, 303 S.E.2d 691

---

[13] 216 W.Va. at 286, 607 S.E.2d at 392.

8

(1983)."[14]  "Upon receiving an adverse determination before the county commission, a taxpayer has a statutory right to judicial review before the circuit court."  W. Va. Code § 11-3-25 (1967).[15]

Judicial review of a decision of a board of equalization and review regarding a challenged tax-assessment valuation is limited to roughly the same scope permitted under the West Virginia Administrative Procedures Act.[16]  As we have

---

[14] Syl. Pt. 1, *Western Pocahontas Properties, Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993).

[15] *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W.Va. 250, 255, 539 S.E.2d 757, 762 (2000).

[16] W. Va. Code §§ 29A-1-1 through 29A-7-4.  West Virginia Code § 29A-5-4(g) provides as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because of the administrative findings, inferences, conclusions, decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

explained, review before the circuit court is confined to determining whether the challenged property valuation is supported by substantial evidence, or otherwise in contravention of any regulation, statute, or constitutional provision.[17]   Therefore, "our review of a circuit court's ruling in proceedings under § 11-3-25 is *de novo*."[18]   And in ascertaining whether Mr. Musick's assessment is in conformity with the regulation applicable to valuing leasehold interests,[19] this Court has held that "interpreting a statute or an administrative rule or regulation presents a purely legal question subject to de novo review."[20]  With these standards in mind, we consider the parties' arguments.


### III.  ANALYSIS

#### A.      *Assessment of Leasehold Interests*

As to the assessment of leaseholds in general, West Virginia Code § 11-5-4 provides:

> [I]n cases of the assessment of leasehold estates a sum equal to the valuations placed upon such leasehold estates

---

> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

[17] *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.* at 254, 539 S.E.2d at 761.

[18] *Id.* at 255, 539 S.E.2d at 762.

[19] W. Va. Code St. R. § 110-1P-3.

[20] Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

shall be deducted from the total value of the estate, to the end that the valuation of such leasehold estate and the remainder shall aggregate the true and actual value of the estate.

Considering this statutory provision, this Court has held that a leasehold interest can be taxable under certain circumstances. In *Great A&P,* we held that West Virginia Code § 11-5-4 provided statutory authority "that a separate leasehold is taxable if it has a separate and independent value from the freehold."[21] We explained that the burden of proof rested with the freehold taxpayer to make such a showing:

> [t]he county assessor may presume that leaseholds have no value independent of the freehold estate and proceed to tax all real property to the freeholder at its true and actual value; the burden of showing that a leasehold has an independent value is upon the freehold taxpayer and the taxpayer must request in a timely manner the separate listing of freehold and leasehold interests.[22]

In so holding, this Court generally distinguished short-term leases from those of longer duration:

> [w]here leaseholds are of short duration the rent paid will usually reflect income to the owner of the freehold commensurate with the fair market value of the real property. Under ordinary conditions the freehold estate will not be reduced in value by virtue of the leasehold, nor will the leasehold itself have any ascertainable market value. Since this latter condition is the normal circumstance in West Virginia, when assessors assess freeholds subject to leaseholds the property is usually fully taxed.

---

[21] 167 W. Va. at 55, 278 S.E.2d at 355.

[22] *Id.* at Syl. Pt. 2.

11

However, there are circumstances involving long-term leaseholds where changed business conditions combined with persistent inflation have made the leaseholds themselves marketable assets of value. Under such circumstances, since the freehold estate is charged with the leasehold for a term of years, the freehold's fair market value is reduced in exact proportion to the value of the leasehold and, therefore, if the real property subject to the leasehold is to be taxed at its "true and actual value," assessors must take into consideration the reduced value of the freehold attendant upon the making of a very bad contract.[23]

Later, in *Maplewood*, we again addressed whether a county assessor could tax a leasehold interest.[24] In concluding that an assessor could assess a leasehold interest if it has an independent value, this Court stated that a component of this process is addressing the marketability of the lease:

[s]ubsequent to the *Davis* case, the state tax department developed an eight-step process for valuing leasehold interests in real estate that is referred to as the "Leasehold Appraisal Policy." Pursuant to that process, steps one and two require an initial determination of whether a leasehold estate was created and secondly whether the lessee has a marketable right to assign or transfer the lease. The remaining six steps in the process are directed at arriving at a value for the leasehold estate. Critical to applying this policy, however, is appreciation of the fact that "the separate value of a leasehold, if any, is based on whether the leasehold is economically advantageous to the lessee, that is a so-called bargain lease, and is freely assignable so that the lessee may realize the benefit of such bargain in the market place."[25]

[23] *Id.* at 56, 278 S.E.2d at 355.

[24] 216 W. Va. at 286, 607 S.E.2d at 392.

[25] *Maplewood*, 216 W. Va. at 286, 607 S.E.2d at 392 (quoting "Valuation of Leasehold Interests," State Tax Commissioner's Annual In-Service Training Seminar,

In *UPE I*, we examined our opinion in *Maplewood* for the limited purpose of assessing whether UPE had presented a challenge to taxability or valuation. We observed:

> Although this Court has not issued a syllabus point prescribing how leaseholds must be valued, we noted in *Maplewood* that the Tax Commissioner had developed an eight-step process for valuing leaseholds which requires at the outset "an initial determination . . . whether the lessee has a marketable right to assign or transfer the lease." 216 W.Va. at 286, 607 S.E.2d at 392.[26]

In footnote eight of *UPE I*, we acknowledged an issue relating to the Leasehold Appraisal Policy, but decided it did not need to be addressed:

> The *Maplewood* Court, ostensibly quoting this policy, explained further that "'the separate value of a leasehold, if any, is based on whether the leasehold is economically advantageous to the lessee, that is a so-called bargain lease, and is freely assignable so that the lessee may realize the benefit of such bargain in the market place.'" 216 W.Va. at 286, 607 S.E.2d at 392 (quoting "Valuation of Leasehold Interests, State Tax Commissioner's Annual In–Service Training Seminar for Assessors, June 14, 1989."). The circuit court maintains this language is not actually contained in the referenced seminar materials and was "mis-cited" in the opinion. Because this issue is not relevant to our resolution of the narrow issue presently before us, we decline to examine it further at this juncture.[27]

---

June 14, 1989). Because this Court referred to this 1989 training seminar manual as the "Leasehold Appraisal Policy" in both *Maplewood* and *UPE I*, we will continue to use this term for clarity's sake.

[26] *UPE I*, 238 W. Va. at 110, 792 S.E.2d at 609.

[27] *UPE I*, 238 W. Va. at 110 n.8, 792 S.E.2d at 609 n. 8.

13

In the present appeal, Mr. Musick argues that *Maplewood* was incorrectly decided, and, as a result, the circuit court erred in relying upon it. Mr. Musick contends that *Maplewood* incorrectly cited to the Valuation of Leasehold Interest Seminar Training Manual (otherwise referred to in *Maplewood* as the Leasehold Appraisal Policy) in holding that the separate value of a leasehold is based on whether leasehold is a bargain lease and freely assignable, as those terms are not contained in the Leasehold Appraisal Policy. Rather, the Leasehold Appraisal Policy instead refers only to marketability.

According to Mr. Musick, while the Leasehold Appraisal Policy that was issued by the Tax Commissioner contains thirteen numbered pages, in *Maplewood*, this Court mistakenly considered a fourteenth page which was not a part of the Leasehold Appraisal Policy. Mr. Musick's counsel asserts that the subject fourteenth page was attached to the Leasehold Appraisal Policy in that case and is a "portion of a tax department ruling given in response to inquiries regarding the taxation of the leasehold estate in real property held by a trust." Mr. Musick asserts that it is not clear if this fourteenth page was a ruling by the Tax Commissioner, or if it was a non-binding technical assistance advisory under West Virginia Code §11-10-5r or some other private letter from the Tax Commissioner.

14

Mr. Musick complains that in *Maplewood* this Court cited language from the subject fourteenth page and incorrectly attributed the language to the Leasehold Appraisal Policy. Mr. Musick asserts that one can only conclude that this Court was under the mistaken impression that the fourteenth page was from the State Tax Commissioner's Leasehold Appraisal Policy. Mr. Musick argues that because this fourteenth page is not a part of the official Leasehold Appraisal Policy, there are a number of outstanding questions that should be discussed regarding this issue on the record before the BER.

This Court has held that "[a]n appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law."[28] Similarly, this Court has stated:

> No prior decision is to be reversed without good and sufficient cause; yet the rule is not in any sense ironclad, and the future and permanent good to the public is to be considered, rather than any particular case or interest. . . . Precedent should not have an overwhelming or despotic influence in shaping legal decisions. No elementary or well-settled principle of law can be violated by any decision or any length of time. The benefit to the public in the future is of greater moment than any incorrect decision in the past. Where vital and important public and private rights are concerned, and the decisions regarding them are to have a

---

[28] Syl. Pt. 2, *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974).

15

direct and permanent influence in all future time, it becomes the duty as well as the right of the court to consider them carefully, and to allow no previous error to continue, if it can be corrected. The reason that the rule of stare decisis was promulgated was on the ground of public policy, and it would be an egregious mistake to allow more harm than good to accrue from it. Much, not only of legislation, but of judicial decision, is based upon the broad ground of public policy, and this latter must not be lost sight of.[29]

Cognizant of this standard, we find no good and sufficient cause to depart from our ruling in *Maplewood*.

Even if this Court in *Maplewood* mistakenly attributed the language contained in a Tax Department ruling as being part of the Leasehold Appraisal Policy, this oversight has no bearing on the veracity of the decision. Whether the language came directly from the Leasehold Appraisal Policy or a ruling of the Tax Commissioner, it is clear in *Maplewood* that this Court relied upon that language to explain what constitutes separate and independent value for the assessment of leasehold interests.[30] The State Tax

---

[29] *Adkins v. St. Francis Hosp.*, 149 W.Va. 705, 719, 143 S.E.2d 154, 163 (1965) (internal citation and quotation omitted).

[30] While Musick asserts that the Leasehold Appraisal Policy does not expressly contain the terms freely assignable and bargain lease, it is evident that the Leasehold Appraisal Policy contemplated these factors. On page 5, it states:

> Before one proceeds with the valuation of leasehold interests there are several preliminary steps which should be covered.
>
> First, the lease contract should be examined to see whether an estate for years was created and *are the marketable rights transferable*.

Commissioner issued its Leasehold Appraisal Policy following *Great A&P*, and also

adopted West Virginia Code of State Rules §110-1P-3.3, which sets forth the procedures

for the valuation of leasehold interests.[31] UPE argues that "the common thread" between

---

Thus, it is understandable why the Tax Commissioner's ruling, which cited the Leasehold Appraisal Policy, utilized the terms bargain lease and freely assignable in ascertaining the separate value of a leasehold.

[31] West Virginia Code of State Rules § 110-1P-3 sets forth how assessors are to value leaseholds in industrial and commercial real properties. It provides:

> 3.3.1. General.
>
> 3.3.1.1. *A leasehold in real property is taxable for ad valorem property tax purposes, if it has a separate and independent value from the freehold.* Where leaseholds are of short duration, the rent paid usually reflects income to the owner of the freehold commensurate with the fair market value of the real property. Under ordinary conditions, the leasehold itself will not have any ascertainable market value. Consequently, in normal circumstances, determine the appraised value of the freehold subject to a leasehold in the same manner that the appraised value of similar commercial or industrial real property not subject to a leasehold is determined.
>
> 3.3.1.2. *However, under circumstances involving long-term leaseholds where the leasehold is itself a marketable asset of value, the leasehold shall be valued as set forth in this rule.* The leasehold interest being a chattel real shall be listed and taxed as Class III or Class IV tangible personal property depending on the location of the freehold.
>
> 3.3.1.3. The appraised value of a freehold estate is the appraised value of the freehold determined without regard to the leasehold, minus the appraised value of the leasehold.
>
> 3.1.4. In valuing a leasehold:

17

these authorities is a focus on whether or not the leasehold is marketable.  UPE asserts

that *Maplewood* directs that the determination of whether a leasehold is marketable is

"whether the leasehold is economically advantageous to the lessee, that is a so-called

3.3.1.4.a. The total value of the property must be estimated and then allocated among the various interests in the property under the terms of the lease; and

3.3.1.4.b. *The appraiser shall determine whether or not value has been created as a result of a favorable lease*, in addition to the total value of the property.

3.3.1.5. In deciding whether a leasehold has value, and if so, what value to assign, the appraiser shall:

3.3.1.5.a. Estimate the value of the entire property, as though not encumbered by the lease; then

3.3.1.5.b. Estimate the value of one (1) of the partial interests, either the leasehold estate of the lessee or the leased fee of the lessor.

3.3.1.5.c. The appraiser shall deduct the value of the partial interest arrived at from the value of the entire property to obtain the value of the other partial interest.

3.3.1.6. To value a leasehold interest, the appraiser shall consider the present (discounted) worth of the rent saving, when the contractual rent at the time of appraisal is less than the current market rent. If the land is improved by the lessee, then the value of the leasehold interest shall be the value of the saving in ground rent, if any, in addition to the value (not cost) of the improvements of the lessee. If the contractual rent is greater than the currently established market rent, the appraiser shall subtract present worth of the difference from the value of the improvement.

W. Va. Code St. R. § 110-1P-3 (Emphasis added).  This regulation had an effective date of July 1, 2013.

18

bargain lease, and is freely assignable so that the lessee may realize the benefit of such bargain in the market place."[32]   UPE contends that as a result, *Maplewood* simply provides a framework for the definition of marketability, as used in *Great A&P*, West Virginia Code of State Rules §110-1P-3.3, and the Leasehold Appraisal Policy.   We agree.[33]

---

[32] 216 W. Va. at 286, 607 S.E.2d at 392.

[33] Mr. Musick asserts that pursuant to § 110-1P-3.3.1.2, this Court should determine that UPE has a separate and independent value and a marketable interest in the WVU lease because UPE was able to borrow money based on the fact that UPE had obtained the lease from WVU.  He also maintains that UPE had a possessory interest in the property during the construction phase, as it controlled every aspect of the planning and construction of the project and received a developer's fee in exchange.  Additionally, he asserts that liability and casualty insurance are the responsibility of UPE, and under West Virginia Code § 33-6-3, the purchaser of insurance must have an insurable interest in the property insured.

In arguing this, Mr. Musick additionally appears to assert that *Maplewood* cannot be reconciled with the regulations in light of changes made to West Virginia Code of State Rules § 110-1P-3 in 2013 because the former regulation promulgated in 1991 was "not as detailed on valuation of leasehold interests as the new regulation."  We find this argument unavailing.  While the amendment made to West Virginia Code of State Rules § 110-1P-3 in 2013 did in fact add more detail with respect to how a leasehold shall be valued, the initial threshold inquiry of determining whether "the leasehold is itself a marketable asset of value" remains unchanged from the prior version.  *See* W. Va. Code St. R. § 110-1P-3.3.2.3 ("However, under circumstances involving long-term leaseholds, where the leasehold is itself a marketable asset of value, the leasehold shall be valued as set forth in this rule.").

UPE argues—and we agree—that Mr. Musick mistakenly conflates value with the concept of separate and independent value in assessing marketability.  Under *Great A&P*, a leasehold interest has "separate and independent value only where it has itself become a marketable asset of value."   167 W.Va. at 56, 278 S.E.2d at 355. (Emphasis added). Similarly, West Virginia Code of State Rules §110-1P-3.3.1.6 states that "[t]o value a leasehold interest, the appraiser shall consider the present (discounted) worth of the rent saving, when the contractual rent at the time of appraisal is less than the current market

19

Because we conclude that *Maplewood* is not in conflict with the Tax Commissioner's regulations, we uphold the *Maplewood* framework, which holds that "the separate value of a leasehold, if any, is based on whether the leasehold is economically advantageous to the lessee, that is a so-called bargain lease, and is freely assignable so that the lessee may realize the benefit of such bargain in the market place."[34] So, the circuit court did not err in applying the *Maplewood* standard in determining that UPE's leasehold interest did not have a separate and independent value.

## B. Mr. Musick's Motion for Remand

Having set forth the proper standard for assessing leasehold interests, we next consider the issue of whether the circuit court should have remanded the case to the BER under West Virginia Code §11-3-25(c).[35] In *UPE I*, this Court found that the circuit

---

rent." The question is whether the lessee derives revenues from the leasehold interest itself and this can only occur where the lessee pays below-market rent and can alienate its leasehold interest to take advantage of the higher rent in the market place. As a result, it is irrelevant whether it secured bank financing, or would receive insurance proceeds. In order for a leasehold interest to have assessable value, the lessee must have rent savings that can be exploited in the marketplace and UPE did not.

[34] *Maplewood*, 216 W.Va. at 286, 607 S.E.2d at 392.

[35] West Virginia Code § 11-3-25(c) (2018) provides, in pertinent part:

> If there was an appearance by or on behalf of the taxpayer before either board, or if actual notice certified by the board, was given to the taxpayer, the appeal, when allowed by the court or judge, in vacation, shall be determined by the court from the record as so certified:

court was bound by the record created before the BER but noted in footnote 16 that West

Virginia Code § 11-3-25(c) states that the circuit court *may* remand to the BER in order

to more fully develop the record.[36]  Here, Mr. Musick asserts that remand to the BER was

---

Provided, That in cases where the court determines that the record made before the board is inadequate as a result of the parties having had insufficient time to present evidence at the hearing before the board to make a proper record, as a result of the parties having received insufficient notice of changes in the assessed value of the property and the reason or reasons for the changes to make a proper record at the hearing before the board, as a result of irregularities in the procedures followed at the hearing before the board, or for any other reason not involving the negligence of the party alleging that the record is inadequate, the court may remand the appeal back to the county commission of the county in which the property is located, even after the county commission has adjourned sine die as a Board of Equalization and Review or a Board of Assessment Appeals for the tax year in which the appeal arose, for the purpose of developing an adequate record upon which the appeal can be decided.

[36] In footnote 16 of *UPE I*, we stated:

As an appeal from the BER, the circuit court's review on appeal (and therefore on remand) is limited to the record created before the BER and the circuit court operates under the same standard of review as that for an administrative appeal. *See* W. Va. Code § 11-3-25(c) ("If there was an appearance by or on behalf of the taxpayer before either board, or if actual notice, certified by the board, was given to the taxpayer, the appeal, when allowed by the court or judge, in vacation, shall be determined by the court from the record as so certified [.]"); *Am. Bituminous Power Partners, L.P.*, 208 W.Va. at 255, 539 S.E.2d at 762 ("[J]udicial review of a decision of a board of equalization and review regarding a challenged tax-assessment valuation is limited to roughly the same scope permitted under the West Virginia Administrative Procedures Act[.]") *But see* W. Va. Code § 11-3-25(c)

21

proper for various reasons: (1) to argue the proper standard to determine valuation;[37] (2)

to develop testimony regarding the issue of valuation because the BER, having found that

the issue was one of taxability, only made a determination regarding jurisdiction; and (3)

to develop further relevant evidence of valuation because, although Commissioner Bloom

> (outlining circumstances under which circuit court may remand to BER for development of the record).

*UPE I*, 238 W. Va. at 114 n. 16, 792 S.E.2d at 613 n. 16.

[37] As to this first argument, Musick contends that the circuit court should have remanded this case back to the BER so that the parties could develop a proper record to determine the viability of the *Maplewood* decision, a per curiam decision, as the record is incomplete as to the proper standard to determine valuation. He maintains that the BER should have been able to examine and determine if another legal standard, such as those found in the Tax Commissioner's regulations, West Virginia Code of State Rules §110-1P-3.3, is more appropriate. To the extent that the parties have had opportunity to brief the issue before the circuit court and this Court, and we have determined that the circuit court did not err in applying the *Maplewood* framework, we need not address this issue. And as this Court has made clear:

> Per curiam opinions have precedential value as an application of settled principles of law to facts necessarily differing from those at issue in signed opinions. The value of a per curiam opinion arises in part from the guidance such decisions can provide to the lower courts regarding the proper application of the syllabus points of law relied upon to reach decisions in those cases.

Syl. Pt. 3, *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001) *overruled in part by* Syl. Pt. 1, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014). "Aim[ing] to extinguish any lingering doubts regarding the precedential value of [per curiam] opinions," we held in *Walker* that "we strongly disagree" with the suggestion that anything beyond the syllabus in a per curiam opinion was merely *obiter dicta*, because adhering to that view "would be discarding many valuable cases in which the presence of unique facts has required this Court to determine whether settled legal precepts applied to those distinct factual scenarios." *Walker*, 210 W.Va. at 495, 558 S.E.2d at 295. As discussed below, Musick had ample opportunity to litigate the issue of his valuation methodology before the BER.

22

attempted to ask a question regarding UPE's 2014 earnings on the subject property, UPE's counsel objected to and stopped that area of inquiry.[38]

In support of his second argument for remand, Mr. Musick contends that because the BER's decision clearly stated that it could not rule on the valuation matter because it was an issue of taxability, and therefore because this Court had no decision to review on the issue of value in *UPE I*, the circuit court should have likewise found that it had no decision to review from the BER and remanded the matter in order for the parties to develop a record on valuation of the UPE's leasehold interest. Under West Virginia Code § 11-3-25, the circuit court's decision to remand is discretionary. The statute clearly states that remand is proper only if the record developed before the BER is inadequate, and only if the inadequacy is not due to the negligence of the party asserting it.[39]

---

[38] This is the extent of Mr. Musick's argument in this regard. This Court has made it clear that "'[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" *State, Dept. of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). And "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) (citation omitted). Even if the Court were to consider this argument, to the extent that Mr. Musick chose to assess UPE's leasehold interest based on the cost of construction-in-place, the argument that revenues could have been probative is misplaced.

[39] *See* W. Va. Code § 11-3-25.

23

In rejecting Mr. Musick's argument that the case should be remanded to the BER, the circuit court concluded:

> [T]he evidence presented by UPE resolves the issue currently before the Court, and if more evidence is necessary to resolve this issue, then any failure to present evidence capable of rebutting UPE's evidence is attributable to the Assessor's negligence in failing to present it to the BER.
>
> The Court notes that the BER made its ruling regarding taxability and jurisdiction after both parties had a full opportunity to present evidence and be heard on the issue. Assessor Musick was given the opportunity to present evidence, (See Hr'g Tr. 34, Feb. 17, 2015 (Commissioner Callen explaining that "the assessor's office may have an opportunity to present once Mr. Walls is completed"); (Commissioner Bloom asking Assessor Musick "[is] there anything that you would like, from the assessor's office, to explain" and Assessor Musick responding, "No.").) Assessor Musick was given the opportunity to present whatever evidence he wanted in support of his assessment of UPE's leasehold interest. A remand now, in this Court's opinion, would allow nothing more than for Respondent Musick to present evidence he perhaps should have presented before the BER. The remand exception contained in West Virginia Code § 11-3-25(c) is designed to correct inadequacies in the record; it is not meant to allow a second bite at the apple.

In reviewing the record before the BER, we conclude that the circuit court did not abuse its discretion. The record is clear that the BER made its ruling regarding taxability and jurisdiction only after both parties had a full opportunity to present evidence and be heard on the issue.

24

At the beginning of the hearing before the BER, UPE's counsel, Mr. Walls, specifically argued that UPE had "an issue with the way the assessment was calculated" and that it believed "that the assessed value at U[niversity] Park should be zero. . . ." During the course of the entire hearing, UPE went on to present evidence attempting to show that Mr. Musick's valuation methodology was erroneous. Mr. Walls represented to the BER that "[t]here's no dispute that the only legal issues we're here to talk about, and factual issues stemming from those legal issues, are whether this is a bargain lease and whether it's freely assignable." At the conclusion of all of the evidence, the BER announced that the issue was one of taxability, and thus, outside of its jurisdiction. In arguing whether the issue was one of taxability or valuation, the following exchange took place:

> MR. CALLEN[40]:  That's -- you know, that's fine. I mean, it says very clearly that I'm not to -- I'm not -- we're not allowed to decide taxability.
>
> MR. WALLS:  And I'm not asking you to. But I understand.
>
> MR. CALLEN:  But you are.
>
> MR. WALLS:  I understand.
>
> MR. CALLEN:  But you are.
>
> You said that -- you said, on three different occasions -- because I wrote it down -- "this assessment is

---

[40] County Commissioners Eldon Callen, Thomas Bloom and Edward Hawkins presided as the BER in this matter.

improper." Improper means it is not taxable. So I took that you are arguing taxability.

MR. WALLS: If you go back to the very beginning, I made it clear. The first words out of my mouth was this is about valuation.

MR. CALLEN: Right. But I don't pick and choose. I listen to everything, and then make my decision.

MR. WALLS: Okay. Well, we'd ask you to set it to zero, then.

MR. CALLEN: What's that?

MR. WALLS: The assessed value.

MR. CALLEN: No, no. You did not prove by clear and convincing evidence that -- as to what the true value is and that the value was wrong.

MR. WALLS: Okay. Could I have that part -- could the commission make its decision?

MR. BLOOM: Okay. Clarification.

We voted on it.

MR. CALLEN: Right.

MR. BLOOM: It's -- the decision is done.

MR. WALLS: Okay. Thank you.

Based upon the testimony in the record, UPE asserts that the BER made a decision on valuation subject to review and we agree. However, even if the BER had not

made a decision, the record was adequate for purposes of appellate review.[41]  During the course of the BER proceedings, Mr. Musick was given a full and fair opportunity to present evidence in support of his assessment of UPE's leasehold interest.  As UPE correctly contends, neither UPE nor Mr. Musick knew at the outset of the hearing that the BER might raise a jurisdictional issue, and both parties were therefore on notice to present their evidence and create a record.  Accordingly, we conclude that the circuit court did not err in holding that Mr. Musick had an adequate opportunity to present evidence, thus foreclosing any right to remand.

## C.    *Burden of Proof*

Because valuations fixed by an assessing officer are presumed to be correct, the burden of showing an assessment to be erroneous is upon the taxpayer.[42]  Mr. Musick asserts that if this Court determines that *Maplewood* was properly decided, UPE did not meet its burden of proving (1) that the WVU lease is not a bargain lease, *and* (2) it is not freely assignable.

---

[41]  *Tug Valley Recovery Center, Inc. v. Mingo County Comm'n*, 164 W. Va. 94, 111, 261 S.E.2d 165, 175 (1979) (stating absence of formal decision by BER will not preclude an appeal "[s]o long as all documents utilized by the Board of Equalization and Review were placed before the circuit courts and so long as all other documents pertaining to the appeal were in the file.").

[42]  *See* Syl. Pt. 1, *Western Pocahontas Properties, Ltd.*, 189 W.Va. 322, 431 S.E.2d 661 (*quoting* Syl. Pt. 7, *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 (1983)).

27

With regard to the first *Maplewood* factor—whether the lease is a bargain lease—Mr. Musick argues that the WVU lease is economically advantageous to UPE. Mr. Musick contends that UPE is a for-profit entity that will derive considerable revenues from the WVU lease and it is certain to be able to pay off the mortgage and profit from this WVU lease. On this basis, it urges the Court to determine that Respondent UPE has not met its burden of proof to show by clear and convincing evidence that this WVU lease is not a bargain lease.

As to the second *Maplewood* factor—whether the lease is freely assignable—Mr. Musick contends that this Court should find that that the WVU lease is freely assignable because it contains the language, "*consent shall not be unreasonably withheld, conditioned, or delayed.*" Thus, he maintains that this term allows assignments absent objective and valid considerations.[43] Further, Mr. Musick argues that WVU has already consented to an assignment in the event of a foreclosure or default on the part of UPE. Because of this, he contends this Court should find that WVU has already consented to an assignment in the WVU lease, and therefore the lease is freely assignable.

To the contrary, UPE asserts that for its leasehold interest to have assessable value, both of the *Maplewood* factors must be present, but for UPE to meet its

---

[43] *See e.g.*, *Van Sloun v. Agans Bros., Inc.*, 778 N.W. 2d 174, 280 (Iowa 2010).

burden of proof in challenging the valuation, it must show only that *one* of the two factors is absent. When we review the record before the BER, it is evident that UPE met its burden of proof.

First, in his testimony before the BER, Mr. Musick conceded that neither he nor anyone in his office used the West Virginia State Tax Commissioner's methodology for the valuation of leasehold interests when he assessed Petitioner's leasehold interest in University Park.

> MR. WALLS: Did you or anybody else in your office use the formula that the state tax commissioner directed assessors to use when assessing leasehold interests in West Virginia when you assessed the leasehold value of the lease at University Park?
>
> MR. MUSICK: No.

Rather, Mr. Musick testified that his office assessed UPE's leasehold interest by taking sixty percent of the cost of the construction-in-place as of the July 1, 2014, assessment date. Without citing any specific legal authority supporting the use of this standard, when asked by UPE's counsel how he calculated the assessed value of the leasehold interest, he stated:

> Based on information that Mr. Nesselroad presented my commercial appraiser, Chris Michael, when he asked what's on -- as of July 1 of 2014, what was the completion -- percentage complete of the construction. And I think that was -- 20.6 percent is what was submitted.

And they took that of the total value that was submitted of what the project would be to get it appraised at 60 percent of that to get the assessed value.

***

Based on the partial completed construction of the personal property, yes, that's what we do [to assess the value of a leasehold interest].

Later, when Mr. Bloom again asked Mr. Musick how he assessed the leasehold interest, Mr. Musick affirmed his reliance upon a percentage of the project cost:

MR. MUSICK:     Based on the information that was presented for percentage of –

MR. BLOOM:     Okay.

MR. MUSICK:     -- completion of the project as of July 1 of 2014.

MR. BLOOM:     Okay.

MR. MUSICK:     Okay?

Then with that – with the total cost of the project, that, then, was taken on to get 60 percent of that to get our assessed value.

So you had your percentage times the total cost of the project to get your appraised, then 60 percent of that to get your assessed value.

MR. BLOOM:     Okay.

***

MR. MUSICK:     And that was just completion of the project at 20.6 percent as of July 1 of 2014.

Based on Mr. Musick's admission that he failed to use the Tax Commissioner's methodology for assessing leasehold interests, we conclude that his assessment was improper. And, even when UPE's counsel questioned Mr. Musick about the applicability of the *Maplewood* factors and whether they had been satisfied, Mr. Musick conceded that UPE's leasehold interest was not freely assignable. In reviewing the evidence presented before the BER, the circuit court summarized the testimony as follows:

> [B]ased on the framework contained in *Maplewood, supra*, this Court finds that Mr. Nesselroad testified at the February 17, 2015 hearing before the BER that the lease held by UPE was not freely assignable. (Hr'g Tr. 10-12, Feb. 17, 2015.) Assessor Musick also testified. Assessor Musick initially contended that the leasehold interest was both freely assignable and a bargain lease. (*Id.* at 26.) Later, however, Assessor Musick agreed that section 28.1 of the Lease and Development Agreement imposed a condition – namely that it II could not be assigned without the prior written consent of the lessor – that rendered the lease not freely assignable. (*Id.* at 31.) At the end of his testimony, attorney Walls asked Assessor Musick the following: "So I assume you concluded that the lease was not a bargain lease." Assessor Musick responded, "Right" (*Id.*)
>
> Pursuant to the *Maplewood* framework, this Court concludes that based on the evidence presented on February 17, 2015, UPE proved by clear and convincing evidence before the BER that the 2015 assessment was erroneous. If a leasehold interest is not freely assignable and is not a bargain lease, it has no value independent of the freehold interest. *See Maplewood*, 216 W. Va. at 286, 607 S.E.2d at 392. Because Respondent Musick agreed that the lease was neither a bargain lease nor freely assignable (Hr'g Tr., Feb. 17, 2015, at 30-31), and because he agreed that he was not entitled to

31

tax the property if West Virginia University said the lease was not freely assignable (Hr'g Tr., Feb. 17, 2015, at 27-28), this Court finds that Petitioner showed by clear and convincing evidence that the 2015 valuation of the leasehold interest should be corrected to $0.

While we agree with the circuit court that Mr. Musick ultimately agreed with UPE's counsel's leading question that the lease "was not a bargain lease," we observed in *UPE I* that "[Mr. Musick] was equivocal on this issue, initially stating that he believed it was a bargain lease, but then agreeing with counsel's leading question indicating that respondent concluded it was not a bargain lease."[44]  The testimony was as follows:

> [MR. WALLS]:     Okay.  Did you do anything to determine if the UPE lease is a bargain lease?
>
> [MR. MUSICK]:    We looked at them collecting the rent, feeling that there was a value there coming in as an independent value.
>
> [MR. WALLS]:     Okay. So I assume you concluded that the lease was not a bargain lease.
>
> [MR. MUSICK]:     Right.

Giving Mr. Musick the benefit of the doubt on this issue, we are not entirely inclined to agree with the circuit court's finding that UPE proved this particular factor with clear and convincing evidence.  However, in the final analysis, this issue is irrelevant as there is no question Mr. Musick conceded that the lease was not freely assignable:

---

[44] *UPE I*, 238 W. Va. 106, 108 n. 3, 792 S.E.2d at 607 n. 3.

32

BY MR. WALLS:    Let me see if I read this correctly, sir.

Section 28.1 of the lease and development agreement between UPE and WVU states as follows, quote, Lessee may not at any time sell, assign, convey, or transfer, paren, each, comma, as applicable, comma, a transfer, closed quote, this lease to another person without the prior written consent of lessor which consent shall not be unreasonably withheld, conditioned, or delayed, period.

Did I read that correctly?

A:    That time you did.

Q:    Okay. And in this context, you understand that the term "lessee" means UPE; right?

A:    Right.

Q:    And you understand that the term "lessor" means WVU; right?

A:    Correct.

Q:    And does this sentence mean to you that the lease is not freely assignable?

A:    The way it's written, yes.

Critically, despite all of this testimony, neither Mr. Musick nor his Chief Deputy, Chuck Penn, offered any further clarifying testimony supporting his assessment methodology, even when invited to do so by the members of the BER. Mr. Bloom asked Mr. Musick "is there anything that you would like, from the assessor's office, to explain?" Mr. Musick simply replied:

> No. I mean, you know, our information we gathered to get to that assessed value is just what we said -- based on that

33

-- and some of the stuff we gathered through that we thought was a separate value based on that with the collection of rent. So there's a lot of that information we had.

I'm not quite sure of the other one. That's why we went with the value on top of that.

Additionally, when Commissioner Callen asked Mr. Penn if he wished to ask questions of Mr. Nesselroad, he declined to do so. Following his direct examination by UPE's counsel, Mr. Musick was asked by Commissioner Bloom whether he wished "to make a final statement" and also declined. Mr. Magro, the Assistant Prosecuting Attorney, likewise declined to present any evidence or argument.[45]

Because the record before us demonstrates that Mr. Musick did not apply the proper standard for assessing leasehold interests and because he also agreed that the lease was not freely assignable, this Court concludes that UPE showed by clear and convincing evidence that the 2015 valuation of the leasehold interest should be corrected to $0. Therefore, we affirm the circuit court's ruling.

---

[45] Also, UPE notes that this Court has not defined the circumstances by which a leasehold interest is freely assignable, but asserts that other jurisdictions have defined a freely assignable lease by "reference to the absence of restrictions on assignment." *See e.g. Corbett v. Firstline Sec., Inc.*, 687 F.Supp. 2d, 124, 129 (2009) ("Under New York law, the benefits and burdens of contracts are freely assumed or assigned absent a contractual provision to the contrary"). UPE contends that applying that definition here, the leasehold interest is clearly not freely assignable, because the lease prohibits free alienability and limits UPE's use of University Park to certain permitted tenants for permitted uses, within WVU's written consent, and because the Leasehold Deed of Trust prohibits UPE from selling, transferring, exchanging, or otherwise disposing of its leasehold interest subject to certain enumerated exceptions. We agree.

## IV. CONCLUSION

We affirm the February 28, 2017, order of the Circuit Court of Monongalia County granting UPE's Petition for Appeal and correcting the assessment for the 2015 tax year to $0.

Affirmed.